● ● $\boxed{15}$

4/2/0
mfg

# ORIGINAL

FILED
HARRISBURG, PA

MAR 3 0 2001

MARY E. D'ANDREA, C
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CLEARY,             :

      Plaintiff,        :
                        :
                        :      Civil Action No. 1:CV-00-2125
      v.                 :
                        :      (Judge Caldwell)
KENNETH KYLER, et al.,    :
                        :
      Defendants       :

## DEFENDANTS KYLER AND WARD'S BRIEF IN
## SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.    STATEMENT OF THE CASE

This civil rights action was initiated by John Cleary ("Plaintiff"), an inmate presently

confined at the State Correctional Institution at Pittsburgh ("SCI-Pittsburgh") and formerly

confined in the Special Management Unit ("SMU") at the State Correctional Institution at Camp

Hill ("SCI-Camp Hill"). The Defendants include former Superintendent Kenneth Kyler, former

SMU Unit Manager William S. Ward, and former Mailroom Supervisor Howard Imschweiler.

In his Complaint, the Plaintiff states that he was housed in the SMU at SCI-Camp Hill

between October 10, 1997 and July 7, 1999. Complaint at ¶7. He was also confined for a brief

period in the Mental Health Unit ("MHU") at SCI-Camp Hill between August 27, 1999 and

August 30, 1999. Complaint at ¶¶8-9.

The Plaintiff contends that the Defendants wrongly withheld legal and other mail from

him while he was confined in the SMU at SCI-Camp Hill. Specifically, he contends that he did

not receive a piece of legal mail, which was postmarked December 5, 1997, until November 12, 1999. Complaint at ¶¶12-16. This delay caused him to be unprepared for the trial of the matter and he lost the case. Complaint at ¶18. He indicates he had court-appointed counsel for this civil case. Complaint at ¶13.

He further states that he did not receive a letter from a friend postmarked August 12, 1998, until November 15, 1999. Complaint at ¶¶23-27. In addition, Plaintiff contends that he did not receive religious books, which were postmarked June 4, 1998, until November 16, 1999. Complaint at ¶¶32-34. Finally, he contends that he did not receive additional religious books postmarked November 20, 1998, until November 23, 1999. Complaint at ¶¶41-43. The Plaintiff contends that the delayed delivery of the religious books resulted in a denial of his religious freedom. Complaint at ¶¶39, 47.

The Plaintiff initiated this action by filing his Complaint on December 7, 2000. The Defendants have waived service of summons. The undersigned counsel is filing a motion to withdraw his appearance for Defendant Imschweiler.

This brief is filed in support of the Defendants Kyler and Ward's Motion to Dismiss Plaintiff's Complaint.

## II.    STATEMENT OF ISSUES PRESENTED

1.    SHOULD THE PLAINTIFF'S COMPLAINT BE DISMISSED IN PART UNDER THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS?

Suggested Answer:    YES.

2.    SHOULD THE PLAINTIFF'S ACCESS TO THE COURT CLAIM BE DISMISSED, SINCE HE STATES THAT HE HAD COURT-APPOINTED COUNSEL?

Suggested Answer:    YES.

3.   SHOULD THE PLAINTIFF'S CLAIM OF CRUEL AND UNUSUAL PUNISHMENT BE DENIED, SINCE THE DELAYED DELIVERY OF A LETTER FROM HIS FRIEND IS AN ISOLATED INCIDENT?

Suggested Answer:   YES.

4.   SHOULD THE PLAINTIFF'S RELIGIOUS FREEDOM CLAIM BE DISMISSED, SINCE HE FAILS TO STATE HOW HIS RELIGIOUS FREEDOM WAS AFFECTED BY THE DELAYED DELIVERY OF HIS RELIGIOUS BOOKS?

Suggested Answer:   YES.


**III.   ARGUMENT**

1.   THE PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN PART UNDER THE APPLICABLE TWO-YEAR STATUTE OF LIMITATIONS.

A.   Standard for Motion to Dismiss

When evaluating a motion to dismiss, the Court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the Plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  However, conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true.  *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Flanagan v. Shively*, 783 F. Supp. 922, 927 (M.D. Pa. 1992). Dismissal of a complaint pursuant to Rule 12(b)(6) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Coades v. Jeffes*, 822 F.Supp. 1189, 1190 (E.D. Pa. 1993), *quoting Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  A complaint that sets forth facts which affirmatively demonstrate that the Plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976).

B.   Statute of Limitations

The Plaintiff's Complaint was not filed until December 7, 2000.  Under the applicable two-year statute of limitations, the Defendants can only be liable for any actions which occurred after December 7, 1998.  The Plaintiff refers to a number of incidents, which pre-date December

3

7, 1998. In particular, he alleges that the delivery of his legal mail postmarked December 5, 1997, was delayed by the Defendants. To the extent that their actions in delaying that legal mail occurred after December 5, 1997 and before December 7, 1998, no liability can be imposed upon those Defendants under the statute of limitations. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Bougher v. University of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989)(Title VII dismissed as untimely).

Similarly, Plaintiff claims that he failed to receive a letter from a friend postmarked August 12, 1998. Complaint at ¶23. To the extent that the Defendants caused the delivery of that letter to be delayed after August 12, 1998 and before December 7, 1998, this Court is precluded from accessing liability against those Defendants under the applicable statute of limitations.

The same argument applies to the alleged delivery of the two sets of religious books, which are said to have been postmarked June 4, 1998 and November 20, 1998, respectively. To the extent that the Defendants' alleged actions in delaying delivery of those religious books occurred before December 7, 1998, they cannot be the basis of any §1983 claim against those Defendants. Therefore, to that extent the Plaintiff's Complaint should be dismissed.

2.   THE PLAINTIFF'S ACCESS TO THE COURT CLAIM SHOULD BE DISMISSED, SINCE HE STATES THAT HE HAD COURT-APPOINTED COUNSEL.

Plaintiff's denial of access to the court claim should also be denied. In his complaint, he states that he failed to receive legal mail relating to his civil action, apparently filed in federal court. However, he states that he had court-appointed counsel in that case. The law is clear that where the Plaintiff has court-appointed counsel, he cannot assert a denial of access to court claim. *Peterkin v. Jeffes*, 855 F.2d 1021, 1046 (3d Cir. 1988); *Morrow v. Harwell*, 640 F. Supp. 225, 227 (W.D. Tex. 1986); *Urbano v. McCorkle*, 334 F. Supp. 161, 164 (D.N.J. 1971), *aff'd*, 481 F.2d 1400 (3d Cir. 1973). It appears Plaintiff did not represent himself at the trial of this

4

unidentified civil action. Therefore, he has failed to state a claim of denial of access to the courts.

In addition, Plaintiff states that there was a trial in this civil action, for which he was unprepared. Complaint at ¶18. Plaintiff does not state exactly when the trial occurred or what time he had before that trial to meet with his lawyer and prepare for the trial. If he had court-appointed counsel as indicated, it would appear that his counsel should have been able to personally meet with the Plaintiff prior to his trial to prepare for his testimony. He also does not indicate whether or not his court-appointed counsel made any additional efforts to contact him other than the piece of legal mail in question, and if so, whether or not those attempts were successful.

Furthermore, under *Lewis v. Casey*, 518 U.S. 343, 356 (1997), in order to establish a viable denial of access to court claim, the Plaintiff must prove that he has a viable non-frivolous legal claim, which was circumvented or interfered with by the Defendants' actions. Plaintiff's complaint is devoid of any description of the civil action in question, which he says he lost. We do not know whether or not he lost the matter at trial through a jury verdict. We do not know whether or not the trial judge dismissed the case under Rule 50, before it went to the jury. We also do not know how the lack of this particular legal mail resulted in the loss of this civil action at time of trial. It can be assumed that the Plaintiff's court-appointed counsel kept copies of whatever he had sent to Plaintiff on that occasion and could review that material with him at or before the trial.

For all of the above reasons, it is requested that the Plaintiff's denial of access to the court claim be dismissed.

5

3.     THE PLAINTIFF'S CLAIM OF CRUEL AND UNUSUAL PUNISHMENT SHOULD
       BE DENIED, SINCE THE DELAYED DELIVERY OF A LETTER FROM HIS
       FRIEND IS AN ISOLATED INCIDENT.

Plaintiff claims that the delay of delivery of a letter from a friend constituted cruel and

unusual punishment. Complaint at ¶31. However, the case law is clear that an isolated incident

cannot rise to the level of a constitutional violation. *George v. King*, 837 F. 2d. 705 (5th Cir.

1988)(single instance of food poisoning was not violation of prisoner's rights); *Roach v.

Kligman*, 412 F. Supp. 521, 527 (E.D. Pa. 1976)(isolated instances of uncomfortable conditions

not cruel and unusual punishment). The fact that he was denied the delivery of a letter from one

friend of his in and of itself cannot form the basis of a civil rights action.

In addition, the right of prison officials to open and examine inmate mail is accepted.

*Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989)(sets forth standard for censorship of

incoming inmate mail); *Acosta v. McGrady*, 1999 U.S. Dist. LEXIS 3191 at *22 (E.D.Pa. March

22, 1999)(copy attached). If the prison officials can legally open and view inmate mail for

security reasons, it appears that the delay of that same mail would not violate the prisoner's

constitutional rights. Therefore, the Plaintiff has failed to state a claim of action.


4.     THE PLAINTIFF'S RELIGIOUS FREEDOM CLAIM SHOULD BE DISMISSED,
       SINCE HE FAILS TO STATE HOW HIS RELIGIOUS FREEDOM WAS AFFECTED
       BY THE DELAYED DELIVERY OF HIS RELIGIOUS BOOKS.

Finally, the Plaintiff complains that the delay in the delivery of various religious books to

him violated his religious rights. Complaint at ¶39. However, the Plaintiff fails to indicate

exactly what is his religion. He also does not state describe the content of the religious books

which he did not immediately receive. All he indicates is that the books were from the "House

of Yahweh" and "Hizmet Religious Books." He fails to indicate at all how the delayed delivery

of the books affected his beliefs in an adverse way.

While the pleading requirements for pro se litigants are relaxed, they should not be relieved of pleading the essential elements of their claims. It is suggested that the Plaintiff has failed to assert the essential elements of a religious freedom claim in this instance.

## IV.    CONCLUSION

For all of the above reasons, it is respectfully requested that the Court grant the Defendants' Motion to Dismiss Plaintiff's Complaint and dismiss the Plaintiff's Complaint.

Respectfully submitted,

Raymond W. Dorian
Assistant Counsel
Attorney I.D. No. 48148

Attorney for Defendants Kyler and Ward only

PA Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA  17011
(717) 731-0444

Dated: March 30, 2001



FRANK ACOSTA v. JAMES MCGRADY; SCOTT WARREN; JANE GOODMAN;
C/O HOPKINS; C/O CARL; LORI ELLIOTT; MARY CANINO; STEVEN DATCHKO

CIVIL ACTION NO. 96-2874

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

1999 U.S. Dist. LEXIS 3191

March 22, 1999, Decided

DISPOSITION: [*1] Defendants' Motion for Summary Judgment granted and
judgment entered in favor of all defendants and against plaintiff.

CASE SUMMARY

PROCEDURAL POSTURE:  In a suit in which plaintiff inmate claimed that defendant
correctional institution violated his civil rights under U.S. Const. amend. I,
VIII and XIV, and sought damages and injunctive relief, defendant brought a
motion for summary judgment.

OVERVIEW:  Plaintiff inmate filed suit against defendant correctional officials,
alleging that he received false misconduct charges and was denied due process at
his misconduct hearings, that defendants destroyed his religious materials, that
defendants denied him incoming  mail,  that defendants denied him the
opportunity to contact his family and to make emergency telephone calls, and
that defendants physically assaulted him. The court granted defendants' motion
for summary judgment. The court found that plaintiff was not denied due process
and that there was credible evidence at each misconduct hearing to result in the
sanction imposed. The court also noted that prisoners do not have a
constitutionally protected liberty interest in remaining in the general
population. Regarding plaintiff's religious material claim, the court noted that
in light of the restricted environment, regulations barring certain property
were reasonable where there are alternate means of observing faith. The court
found that plaintiff failed to present evidence to support his allegation
regarding his ability to correspond and receive  mail,  and that the physical
contact alleged was constitutionally de minimis.

OUTCOME:  Defendants' motion for summary judgment was granted because plaintiff
failed to offer evidence which would support a conclusion that his due process
rights were violated, he failed to state a constitutional violation under either
the First, Fourth or Fourteenth Amendments, and because the physical contact
alleged was constitutionally de minimis and did not constitute an Eighth
Amendment violation.

1999 U.S. Dist. LEXIS 3191, *

CORE TERMS:  misconduct, prison, inmate, telephone, prisoner, summary judgment,
mail, disciplinary, religious, regulation, confinement, guard, Eighth Amendment,
First Amendment, constitutional violation, grievance procedure,
post-deprivation, deposition, non-moving, sanctioned, custody, cell,
constitutional right, de minimis, deprivation, confiscation, confiscated,
contraband, correspond, emergency


CORE CONCEPTS -

Civil Procedure: Summary Judgment: Summary Judgment Standard
Pursuant to Fed. R. Civ. P. 56(c), in deciding a motion for summary judgment the
court must determine whether there exist any triable issues of fact. A court
must grant the motion if it finds that the pleadings, together with depositions,
admissions, answers, interrogatories, and affidavits present "no genuine issue
of material fact and that the moving party is entitled to judgment as a matter
of law."


Civil Procedure: Summary Judgment: Burdens of Production & Proof
In responding to a motion for summary judgment, the non-moving party must
present "more than a mere scintilla of evidence in its favor" and may not rely
on unsupported assertions or conclusory allegations. When considering a motion
for summary judgment, the court must view all evidence in favor of the
non-moving party. Additionally, all doubts must be resolved in favor of the
non-moving party.


Civil Procedure: Summary Judgment: Burdens of Production & Proof
Once a party has moved for summary judgment, the non-moving party must "go
beyond the pleadings and designate specific facts showing that there is a
genuine issue for trial. Thus, plaintiff has an obligation to present
affirmative evidence to support his claims.


Constitutional Law: Substantive Due Process: Scope of Protection
Prisoners do not have a constitutionally protected liberty interest in remaining
in the general population.


Constitutional Law: Substantive Due Process: Scope of Protection
The baseline for determining what is "atypical and significant," or the
"ordinary incidents of prison life" is ascertained by what a sentenced inmate
may reasonably expect to encounter as a result of his or her conviction in
accordance with due process of law discipline by prison officials in response to
a wide range of misconduct falls within the expected parameters of the sentence
imposed by a court of law.


Constitutional Law: Procedural Due Process: Scope of Protection
The filing of charges, even those later proven to be false, is not a
constitutional violation so long as the inmate is provided with due process,
unless the charges were filed in retaliation for the exercise of a
constitutional right.


Constitutional Law: Procedural Due Process: Scope of Protection
A prisoner is entitled to written notice of the charges against him and the
opportunity to be heard in his own defense.


Constitutional Law: Fundamental Freedoms: Freedom of Religion: Free Exercise of
Religion

Case 1:00-cv-02123-WWC-PT    Document 15    Filed 03/30/2001    Page 10 of 21

1999 U.S. Dist. LEXIS 3191, *    PAGE    4

To justify a burden on a prisoner's free exercise of his religion, there must be a legitimate penological interest which supports the imposition of the burden. The Court must inquire whether prison regulations restricting inmates' U.S. Const. amend. I rights operate in a neutral fashion, without regard to the content of the expression. A second factor relevant in determining the reasonableness of a prison restriction is whether there are alternative means of exercising the right that remain open to prison inmates. Courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation. A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

Constitutional Law: Substantive Due Process: Scope of Protection
A prisoner may establish an unconstitutional deprivation of property by showing confiscation of materials either in retaliation for the exercise of constitutional rights or where, as a result, there was a denial of access to the courts. Absent proof of retaliation or denial of access, plaintiff must demonstrate that the loss of materials itself amounted to a violation of procedural due process where even intentional deprivations of property, without more, are not constitutionally actionable if state law offers a meaningful post-deprivation remedy.

Constitutional Law: Substantive Due Process: Scope of Protection
Censorship of  mail  in a prison is permissible if it furthers security, order, or rehabilitation, and is conducted with minimal procedural safeguards. Such regulations are valid if they are reasonably related to legitimate penological interests.

Constitutional Law: Procedural Due Process: Scope of Protection
Telephone calls necessary to conduct legal business have received a higher degree of protection from the courts than telephone privileges generally. A prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him. However, the denial of one emergency call, without any showing of injury or even that a true emergency existed, does not state a constitutional claim. In order to state a claim for deprivation of telephone access, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct.

Constitutional Law: Criminal Process: Assistance of Counsel
In a legal deprivation claim, plaintiff must allege specific instances of prejudice to his legal rights, such as missed filing deadlines, a denial of legal assistance to which he was entitled, or the loss of a case which he should have won.

Constitutional Law: Cruel & Unusual Punishment
Under the two-part test for determining if an U.S. Const. amend. VIII violation has occurred, there is both an "objective" and "subjective" element. The objective prong is satisfied if the prisoner is subjected to the unnecessary and wanton infliction of pain. The subjective element examines the motive of the prison official: to state a U.S. Const. amend. VIII claim, the plaintiff must show a culpable state of mind on the part of the part of the defendant.

Constitutional Law: Cruel & Unusual Punishment



Although no court approves of physical violence in the correctional system, courts have found certain physical confrontations to be merely de minimis and not violative of the constitution.

COUNSEL: FRANK ACOSTA, PLAINTIFF, Pro se, HUNTINGDON, PA USA.

For JAMES MCGRADY, JANE GOODMAN, HOPKINS, C/O, CARL, C/O, LORI ELLIOTT, MARY CANINO, DASKO, SCOTT WARREN, DEFENDANTS: BETH ANNE SMITH, OFFICE OF ATTORNEY GENERAL, PHILA, PA USA.

JUDGES: JAN E. DUBOIS.

OPINIONBY: JAN E. DUBOIS

OPINION: ORDER AND MEMORANDUM

   AND NOW, to wit, this 22nd day of March, 1999, upon consideration of defendants' Motion for Summary Judgment (Doc. No. 46, filed June 16, 1998), and plaintiff's Response To Opposition To Summary Judgment (Doc. No. 56, filed July 14, 1998), for the reasons set forth in the accompanying Memorandum, IT IS ORDERED that the defendants' Motion for Summary Judgment is GRANTED and Judgment is ENTERED in favor of defendants, James McGrady, Scott Warren, Jane Goodman, Corrections Officer Richard Hopkins, Corrections Officer Rick Carl, Lori Elliott, Mary Canino, and Steven Datchko, and against plaintiff, Frank Acosta.

   MEMORANDUM

A. Background.

   Plaintiff Frank Acosta is an inmate who at all times material to this suit was incarcerated[*2] at the State Correctional Institution at Mahanoy ("SCI Mahanoy"). In his pro se Amended Complaint filed under 42 U.S.C. @ 1983, he claims that defendants, who at all times material to this suit served as officers and/or employees at SCI Mahanoy, violated his civil rights under the First, Eighth and Fourteenth Amendments; plaintiff seeks damages and injunctive relief. Named as defendants are James McGrady, the former Security Captain, former Unit Manager Scott Warren, former  Mail  Room Supervisor Jane Goodman, Corrections Officer ("CO") Hopkins, CO Carl, former Corrections Counselor Lori Elliott, Department of Corrections ("DOC") Hearing Examiner Mary Canino, and Lieutenant Steven Datchko. Defendants now move for summary judgment on all of plaintiff's claims.

   Plaintiff's Amended Complaint alleges that: (1) plaintiff received numerous false misconduct charges; (2) he was denied due process at his misconduct hearings; (3) some of his personal, legal and religious property was confiscated, and never returned; (4) he was not present when his property was searched; (5) he was denied incoming  mail  for two to three months; (6) he was not allowed to contact his family for eighteen months[*3] while he was serving time in the Restricted Housing Unit ("RHU"); (7) he was not allowed to use the telephone to make emergency telephone calls for the eighteen months he was in the RHU; (8) he was physically assaulted by CO Carl; and (9) he was denied adequate medical treatment while he was confined in the RHU. In its Memorandum and Order entered August 2, 1996, the Court dismissed as frivolous plaintiff's claims relating to loss of personal and legal property, the search of his property, and his medical treatment. The Court permitted the following

claims to proceed against the following defendants:

1. Plaintiff's claims that he received false misconduct charges and was denied due process at his misconduct hearings, resulting in his confinement in the Restricted Housing Unit at SCI Mahanoy for a period of eighteen (18) months, against defendants McGrady, Datchko, Warren, Goodman, Elliott, Canino, and COs Carl and Hopkins;

2. Plaintiff's claim regarding the alleged destruction of his religious materials, against defendants Hopkins, Datchko, and McGrady;

3. Plaintiff's claim regarding the denial of his incoming mail for two to three months, against defendants McGrady and Goodman; [*4]

4. Plaintiff's claim that he was denied the opportunity to contact his family and to make emergency telephone calls for eighteen (18) months while in the RHU, against defendants McGrady, Warren and Elliott;

5. Plaintiff's claim that he was physically assaulted by CO Carl, against defendant Carl.

See Doc. No. 7, Order entered August 2, 1996, at 2-4.

The Court must now examine each of the five remaining claims to determine if defendants are entitled to summary judgment.

B. Discussion.

1. Standard of Review

In deciding a motion for summary judgment the Court must determine whether there exist any triable issues of fact. See Anderson v. Liberty Lobby, 477 U.S. 242, 247-49, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A court must grant the motion if it finds that the pleadings, together with depositions, admissions, answers, interrogatories, and affidavits present "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In responding to a motion for summary judgment, the non-moving party must present "more than a mere scintilla of evidence in its favor" and may not rely on unsupported[*5] assertions or conclusory allegations. See Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). "When considering a motion for summary judgment, the court must view all evidence in favor of the non-moving party . . . . Additionally, all doubts must be resolved in favor of the non-moving party." Securities and Exchange Commission v. Hughes Capital Corp., 124 F.3d 449, 452 (3d Cir. 1997) (citations omitted).

Plaintiff Acosta has been given ample time to respond to defendants' motion for summary judgment, which was filed on June 26, 1998. Plaintiff initially responded with a two page submission which merely restated a few of the claims and facts already asserted in his Amended Complaint. By Order dated August 6, 1998, the Court stayed proceedings for sixty days to allow plaintiff an opportunity to secure new counsel; n1 after plaintiff failed to secure counsel, by Order dated November 24, 1998, the Court granted plaintiff until December



13, 1998 to file a supplemental response to defendants' motion for summary judgment. The November 24 Order also stated that, in the event plaintiff did not file and serve such a supplemental response, the Court[*6] would decide defendants' motion on the present state of the record. Plaintiff has not filed any such response with the Court.

- - - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n1 On November 11, 1996, plaintiff filed a motion requesting, inter alia, appointment of counsel to assist him; that portion of the motion was granted by the Court by Order dated December 18, 1996. By Order dated June 6, 1997, attorneys George S. Bobnak and Nancy Stewart were appointed to represent plaintiff under the Prisoner Civil Rights Panel Program. On May 27, 1998, counsel for plaintiff filed a motion for leave to withdraw as counsel; that motion was granted by Order dated June 2, 1998. Under the circumstances presented the Court decided not to try to appoint new counsel to represent plaintiff.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - - -

Once a party has moved for summary judgment, the non-moving party must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986) (quoting[*7] Fed. R. Civ. P. 56(c)). Thus, plaintiff has an obligation to present affirmative evidence to support his claims. See Anderson, 477 U.S. at 257. Although plaintiff's response to defendants' motion for summary judgment contains only facts already included in his Amended Complaint, and thus does not strictly speaking provide facts "beyond the pleadings," those facts, together with the many specific incidents alleged in the Amended Complaint, the deposition of plaintiff, the defendants' answers to plaintiff's interrogatories, and copies of many of the misconduct reports and other documents generated at SCI Mahanoy regarding plaintiff, all part of the record before the Court, provide the Court with an adequate evidentiary basis to rule on the merits of the instant motion. See, e.g., Jones v. Sheehan, Young & Culp, 82 F.3d 1334, 1338 (5th Cir. 1996) (stating that Fed. R. Civ. P. 56 imposes on the non-moving party "the duty to 'designate' the specific facts in the record that create genuine issues precluding summary judgment.")

2. Misconduct Charges Against Plaintiff and Incarceration in the Restricted Housing Unit

Plaintiff claims that he was the victim of numerous[*8] false misconduct charges and was denied due process at misconduct hearings, resulting in his confinement in the RHU at SCI Mahanoy for a period of eighteen months. According to the Amended Complaint, defendants McGrady, Datchko, Warren, Goodman, Elliott, Canino, and COs Carl and Hopkins falsified or conspired to falsify misconduct reports, and "knowingly" conspired to deprive plaintiff of due process rights and subject him to the "mental cruelty" of unwarranted confinement in the RHU. Amended Complaint at 7.

The factual background of this claim, while lengthy, can be summarized as follows: on April 18, 1994, the mail room at SCI Mahanoy received a package addressed to plaintiff, containing two jogging suits from Bloomingdale's


department store. Before that date, the security captain at SCI Mahanoy,
defendant McGrady, had received a telephone call from Bloomingdale's informing
him that a "Frank Acosta" had purchased the jogging suits by telephone with a
fraudulently used credit card number. Subsequently, corrections officers under
orders from defendant McGrady searched plaintiff's cell and confiscated
documents containing telephone numbers (including Bloomingdale's), Social
Security[*9] numbers which were not plaintiff's, and scripts which
ostensibly described various means of obtaining personal information from
unsuspecting individuals. This discovery led defendant McGrady to conclude that
plaintiff had attempted to purchase the jogging suits by means of a credit card
fraud. Accordingly, McGrady wrote a misconduct report charging plaintiff with
three misdemeanors, including receiving stolen property and possession of
contraband.

   At a disciplinary hearing on April 26, 1994, the DOC hearing examiner, Mary
Canino, refused to allow plaintiff representation due to his failure to promptly
return his request for representation and witnesses in a timely manner.
Plaintiff refused to proceed with the hearing without representation, and
defendant Canino decided, based on a preponderance of the evidence before her,
that plaintiff was guilty of the misconduct charged. Plaintiff was sanctioned,
in absentia, to sixty days of disciplinary confinement in the RHU; on appeal to
the Central Office Review Committee, this decision was vacated and the case
remanded for a rehearing in which plaintiff was to be permitted the requested
representation and given the right to call witnesses. [*10] On August 4,
1996, defendant Canino conducted a rehearing in which plaintiff denied ever
receiving the package from Bloomingdale's and denied that the documents found in
his cell relating to fraud belonged to him. Defendant Canino found McGrady's
account, in conjunction with the materials found in plaintiff's cell, to be more
credible than plaintiff's denials, and once again sanctioned plaintiff to sixty
days disciplinary time and "revocation" [sic] of contraband.

   Numerous misconduct reports followed plaintiff's initial confinement in the
RHU. On May 17, 1994, defendant McGrady charged plaintiff with unauthorized use
of the  mail  for corresponding, without permission, with inmates at SCI
Pittsburgh. At plaintiff's disciplinary hearing on May 19, 1994, plaintiff
admitted writing the letters but argued that the misconduct was untimely,
because the letters had been written and sent in January or February of 1994.
Defendant Canino found Acosta guilty of the misconduct charge and sanctioned him
to fifteen days disciplinary custody. Other misconduct reports and hearings
followed, each hearing resulting in additional sanctions imposed on plaintiff by
Hearing Examiner Canino: on June 20, [*11] 1994 (unauthorized use of the
 mail  or telephone, thirty days RHU); on September 20, 1994 (unauthorized use
of the telephone, thirty days RHU); on September 22, 1994 (possession of
contraband documents relating to fraud, sixty days RHU); on September 29, 1994
(assault and threatening an employee with bodily harm, ninety days RHU; and on
January 3, 1995 (threatening an employee with bodily harm and using abusive or
obscene language to an employee, ninety days RHU). In sum, plaintiff spent from
April of 1994 to June 11, 1995 in the RHU.

   Plaintiff claims that the defendants named in this claim violated his
Fourteenth Amendment right to due process by either knowingly filing false
misconduct charges or, in the case of defendant Canino, by wrongfully finding
him guilty of the misconducts charged and thus wrongfully sanctioning him to
disciplinary custody in the RHU. As a preliminary consideration, it is important
to state that prisoners do not have a constitutionally protected liberty

Case 1:00-cv-02123-WWC-PT    Document 15    Filed 03/30/2001    Page 15 of 21

1999 U.S.  Dist. LEXIS 3191, *                     PAGE    9

interest in remaining in the general population. See Sandin v. Conner, 515 U.S.
472, 485, 132 L. Ed. 2d 418, 115 S. Ct. 2293 (1995); see also Drexel v. Vaughn,
1998 U.S. Dist. LEXIS 4294, 1998 WL 151798 at *6-7 (E.D. Pa. April[*12] 2,
1998). Thus plaintiff cannot claim that his lengthy incarceration in the RHU,
standing alone, establishes any violation of his Fourteenth Amendment due
process rights. Unless plaintiff can prove that his confinement in disciplinary
custody amounted to an "atypical and significant hardship . . . in relation to
the ordinary incidents of prison life," Sandin, 515 U.S. at 485, his transfer
from general population to the RHU implicates no constitutional protections. See
Griffin v. Vaughn, 112 F.3d 703, 706-8 (3d Cir. 1997) (holding that confinement
in an RHU for up to 15 months without any pre-transfer hearing implicated no
protected due process interest). "The baseline for determining what is 'atypical
and significant'--the 'ordinary incidents of prison life' -- is ascertained by
what a sentenced inmate may reasonably expect to encounter as a result of his or
her conviction in accordance with due process of law . . . 'discipline by prison
officials in response to a wide range of misconduct falls within the expected
parameters of the sentence imposed by a court of law.'" Griffin, 112 F.3d at 706
(quoting Sandin, 515 U.S. at 485).

   The record shows that plaintiff's stay[*13] in the RHU was in no way
unusual. By plaintiff's admission, he received three meals a day (although they
were often cold by the time they reached him), yard time every day, and a shower
twice a week. He had access to books, writing materials and religious materials,
and was able to practice his faith. Dep. of Frank Acosta, at 20-32. While
plaintiff's confinement in the RHU was, without a doubt, a serious hardship,
that hardship was the intended result of the SCI Mahanoy disciplinary process.
There is no allegation that plaintiff's treatment in the RHU was in any way
inconsistent with the guidelines set out in the SCI Mahanoy RHU L-5, the
Inmate's Orientation Manual. Thus, the incarceration of plaintiff in the RHU was
"within the expected parameters" of plaintiff's sentence and implicated no
protected due process rights.

   Plaintiff alleges that the officers who charged the misconducts against him
did so maliciously and fraudulently. The filing of charges, even those later
proven to be false, is not a constitutional violation so long as the inmate is
provided with due process, unless the charges were filed in retaliation for the
exercise of a constitutional right. See Freeman v. Rideout,[*14] 808 F.2d
949 (2d Cir. 1986); Flanagan v. Shively, 783 F. Supp. 922, 931-32 (M.D. Pa.),
aff'd, 980 F.2d 722 (3d Cir. 1992). Plaintiff provides no evidence that
defendants were retaliating against him for any reason, much less for the
exercise of some constitutional right, and there is no evidence that any of the
charges against him were proven to be false; moreover, there is no evidence of
the motivation of those the plaintiff alleges were conspiring against him.
Because no facts have been presented which would support an allegation of
retaliatory sanctions against plaintiff, plaintiff has failed to produce
evidence of any constitutional violation which would be cognizable under @ 1983.

   Finally, plaintiff claims that defendant Canino wrongfully sanctioned him to
disciplinary custody in the RHU. Under Wolff v. McDonnell, 418 U.S. 539, 41 L.
Ed. 2d 935, 94 S. Ct. 2963 (1974), a prisoner is entitled to written notice of
the charges against him and the opportunity to be heard in his own defense.
Plaintiff received such notice, by way of written misconduct charges, and was
eventually given the right to representation and a meaningful defense in each of
his misconduct hearings. [*15] Moreover, the record establishes that there
was credible evidence supporting the sanctions imposed by defendant Canino in

Case 1:00-cv-02123-WWC-PT    Document 13    Filed 03/30/2001    Page 16 of 21

1999 U.S. Dist. LEXIS 3191, *                                    PAGE    10

each case. See Superintendent v. Hill, 472 U.S. 445, 454, 86 L. Ed. 2d 356, 105 S. Ct. 2768 (1985) (where prison disciplinary board's decision was supported by "some evidence" in the record, decision resulting in deprivation of liberty interest comported with the requirements of due process.) Even evidence that could be characterized as "meager" meets the "some evidence" standard. Id. at 456. Under this standard, the record establishes that defendant Canino had sufficient credible evidence before her at each misconduct hearing to justify the resulting sanction. Plaintiff has thus failed to offer any facts which would support a conclusion that his due process rights were violated by his multiple disciplinary sanctions, and his claim of due process violations is without basis in law.

3. Confiscation and Failure to Return Some of Plaintiff's Religious Materials

Plaintiff states that the authorities at SCI Mahanoy never returned certain religious books and clothing which had been confiscated when he was sanctioned to disciplinary custody in the RHU. [*16] Among the confiscated articles was plaintiff's Koran, which was a hardcover book and thus prohibited in the RHU. Plaintiff admits that all such articles were contraband in the RHU, and thus confiscatible under prison regulations. Plaintiff claims, however, that the failure to return these religious materials after his departure from the RHU and from SCI Mahanoy itself violated his civil rights. The defendants, in response, allege that plaintiff did receive his prayer rugs, kufis and his Koran, although they do not dispute that other items may have been retained by the DOC.

To justify a burden on a prisoner's free exercise of his religion, there must be a legitimate penological interest which supports the imposition of the burden. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 96 L. Ed. 2d 282, 107 S. Ct. 2400 (1987); St. Claire v. Cuyler, 634 F.2d 109, 116 (3d Cir. 1980) (upholding prison officials' ban of all headgear, including kufis, in prison dining areas as valid under the First Amendment). n2 The Court must inquire whether prison regulations restricting inmates' First Amendment rights operate in a neutral fashion, without regard to the content of the expression. [*17] See Bell v. Wolfish, 441 U.S. 520, 551, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979); Pell v. Procunier, 417 U.S. 817, 828, 41 L. Ed. 2d 495, 94 S. Ct. 2800 (1974). A second factor relevant in determining the reasonableness of a prison restriction is whether there are alternative means of exercising the right that remain open to prison inmates. See Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 131, 53 L. Ed. 2d 629, 97 S. Ct. 2532 (1977). Courts should be particularly conscious of the "measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." Pell, 417 U.S. at 827. A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. See Turner v. Safley, 482 U.S. 78, 90, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987). "In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." Id. at 90. Finally, the absence of ready alternatives is evidence [*18]of the reasonableness of a prison regulation. See Block v. Rutherford, supra, 468 U.S. 576, 587 (1984).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - - - -

n2 While the St. Claire standard was called into question by the passage,

in 1993, of the Religious Freedom Restoration Act (RFRA), see, e.g., Muslim v. Frame, 891 F. Supp. 226, 228 (E.D. Pa. 1995), the Supreme Court recently declared RFRA inapplicable to state regulations and agencies. See City of Boerne v. Flores, 521 U.S. 507, 138 L. Ed. 2d 624, 117 S. Ct. 2157 (1997). In light of this holding, the St. Claire standard remains an accurate statement of the law in the Third Circuit.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

In the instant case, the regulation of personal property in the RHU applied to all religious materials outside of a soft-cover Bible, Koran or other sacred text. RHU Inmate's Orientation Manual, at 7. By plaintiff's own admission, he was able to practice his religion while in the RHU and had access to an Islamic chaplain. Dep. of Frank Acosta, at 50-56. Thus the regulation was both neutral and permitted[*19] the inmates alternate forms of religious worship. The question, then, is whether the exclusion of personal religious property from the RHU is a reasonable regulation, in light of the deference due such regulations by the Court. Under the rule of St. Claire, if the wearing of religious articles can be prohibited in a general population area such as a dining hall, such articles can certainly be restricted in the highly controlled environment of the RHU. Prison guards in the RHU check on the inmates only occasionally, and are thus understandably concerned about the possible improper use of items which inmates bring into the RHU. In light of the inherently restricted environment of the RHU, the Court believes that regulations barring certain personal religious property in the RHU are inherently reasonable where, as here, the prisoner is afforded alternate means of expressing and observing his faith.

The failure of prison officials to return certain items belonging to plaintiff does not constitute a violation of plaintiff's rights under either the First, Fourth, or Fourteenth Amendments. A prisoner may establish an unconstitutional deprivation of property by showing confiscation of[*20] materials either in retaliation for the exercise of constitutional rights or where, as a result, there was a denial of access to the courts. Hodgin v. Agents of Montgomery County, 619 F. Supp. 1550, 1553-54 (E.D. Pa. 1985). Absent proof of retaliation or denial of access, plaintiff must demonstrate that the loss of materials itself amounted to a violation of procedural due process under the standard set forth in Hudson v. Palmer, 468 U.S. 517, 533-35, 82 L. Ed. 2d 393, 104 S. Ct. 3194 (1984). Under Hudson, even intentional deprivations of property, without more, are not constitutionally actionable if state law offers a meaningful post-deprivation remedy. Hudson, 468 U.S. at 533-35.

Pennsylvania provides an adequate post-deprivation remedy for defendant's claim. An inmate grievance procedure, which exists in Pennsylvania's correctional system, can be sufficient for this purpose. Id. at 536 n. 15; Brokenbough v. Smith, 1996 U.S. Dist. LEXIS 4263, 1996 WL 162345, at *2 (E.D. Pa. Apr. 4, 1996) (noting sufficiency of inmate grievance procedure); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (inmate grievance procedure constituted adequate post-deprivation remedy for denial of[*21] free cigarettes). In addition, the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. C.S.A. @ 8550 (1982), contains a waiver of the defense of sovereign immunity for willful misconduct. See Reid v. Seville, 1996 U.S. Dist. LEXIS 10319, 1996 WL 421901, at *4 (E.D. Pa. July 19, 1996) (statute permits suit against state employees where conduct alleged is willful, malicious, criminal or fraudulent). Without ruling on the adequacy of the grievance procedure,

standing alone, the grievance procedure and this statute, taken together, satisfy the requirements of post-deprivation due process. See Reid, 1996 WL 421901, at *4 (adequate remedy for prisoner's loss of legal papers exists under Pennsylvania Tort Claims Act); Hodgin, 619 F. Supp. at 1553-54 (prisoner could pursue common-law remedies against officials for confiscation of legal materials); Austin, 893 F. Supp. at 454 (prisoner has state court action for property deprivation). Given the facts as presented, there is no evidence of retaliatory conduct on the part of defendants, of denial of access to the courts, or of the non-existence of an adequate post-deprivation state remedy. Thus plaintiff's claim fails as a matter of law to state [*22] a constitutional violation as required under @ 1983.

### 4. Denial of Plaintiff's Incoming  Mail

Plaintiff claims that he received little or no  mail  for three months while confined in the RHU, and was in addition prevented from contacting his friends and family, all in violation of his First Amendment right of free association. Defendants respond that defendant McGrady only monitored and delayed specific pieces of  mail  from inmates at other correctional institutions, with the approval of the Superintendent of SCI Mahanoy. Moreover, defendants point to portions of plaintiff's deposition in which he admits being able to correspond with close family whose addresses he had memorized before the confiscation of his address books during the April, 1994 search of plaintiff's cell. Defendants state that a procedure was put in place whereby plaintiff could request and receive addresses from defendant McGrady through his counselor, defendant Elliott. Plaintiff appears to have successfully utilized this procedure on at least one occasion.

Censorship of  mail  in a prison is permissible if it furthers security, order, or rehabilitation, and is conducted with minimal procedural safeguards. [*23] See Procunier v. Martinez, 416 U.S. 396, 413-14, 40 L. Ed. 2d 224, 94 S. Ct. 1800 (1974). Such regulations are "valid if [they are] reasonably related to legitimate penological interests." Thornburgh  v.  Abbott , 490 U.S. 401, 413, 104 L. Ed. 2d 459, 109 S. Ct. 1874 (1989) (quoting Turner v. Safley, 482 U.S. 78, 89, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987)). In the instant case, plaintiff had been found guilty of misconducts involving fraud, misuse of the telephone, and improper use of the  mail.  It was entirely reasonable under these circumstances for prison officials to monitor plaintiff's correspondence. Despite this, plaintiff was permitted to send  mail,  and was permitted access (albeit restricted, through an official intermediary) to the information in his address book. Plaintiff was in fact able to communicate with his family. In light of these facts, plaintiff has failed to present any evidence which would support his allegation of a constitutional violation stemming from the limitations imposed on his ability to correspond and receive correspondence in return.

### 5. Denial of Plaintiff's Telephone Privileges

Plaintiff claims that he was denied access to the telephone [*24] while incarcerated in the RHU; specifically, plaintiff points to the denial of the right to call his wife following the receipt of a mailgram informing plaintiff of his mother-in-law's death, and to the denial of the right to call "the courts" or, as it appears in plaintiff's deposition, his attorney, in response to a letter sent to plaintiff relating to a Post Conviction Relief Act (PCRA) petition. Amended Complaint at 4. Defendants respond that the denial of a


phone call cannot, without more, serve as the basis for a claim of a First Amendment violation.

Telephone calls necessary to conduct legal business have received a higher degree of protection from the courts than telephone privileges generally. See Ramos v. Vaughn, 1995 U.S. Dist. LEXIS 21644, 1995 WL 386573 at *8 (E.D. Pa. June 27, 1995). A prisoner has a constitutional right to use a telephone only if no other reasonable means of communication are available to him. See, e.g., Ingalls v. Florio, 968 F. Supp. 193, 203 (D.N.J. 1997); see also Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986) (stating that prisoners have a First Amendment right to telephone access, subject to reasonable security limitations). However, [*25] the denial of one emergency call, without any showing of injury or even that a true emergency existed, does not state a constitutional claim.  Higgins v. Coombe, 1997 U.S. Dist. LEXIS 8418, 1997 WL 328623, at *4-5 (S.D.N.Y. June 16, 1997).

In order to state a claim for deprivation of telephone access, an inmate must make some showing of prejudice or actual injury as a result of the prison officials' conduct. See Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989); Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3d Cir. 1988). In a legal deprivation claim, plaintiff must allege specific instances of prejudice to his legal rights, such as missed filing deadlines, a denial of legal assistance to which he was entitled, or the loss of a case which he should have won. See Martin v. Davies, 917 F.2d 336, 340 (7th Cir. 1990).

Plaintiff, as has already been established, was at all times able to correspond with his wife and close family members. He thus was afforded a reasonable alternative which allowed him to correspond with both his wife and his attorney. Nor has plaintiff come forward with any evidence that his mother-in-law's death was an "emergency" requiring his presence on the telephone. Although plaintiff[*26] does allege that his PCRA petition was denied as a result of his inability to telephone the court or his attorney, no evidence supporting this claim has been provided to the Court. In ruling on a motion for summary judgment, a court may not rely on unsupported assertions or conclusory allegations.  Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted). Because plaintiff has come forward with no evidence either that a genuine emergency mandated these telephone calls, or that his PCRA petition was denied due to his inability to place such calls, no constitutional violation on the part of defendants can be established.

6. Assault by a Corrections Officer

Plaintiff claims that he was assaulted by defendant CO Carl on or about September 27, 1994, as he was being led to a misconduct hearing. According to plaintiff, defendant Carl pulled sharply on his arms, which were handcuffed behind his back, and slammed him into the wall for no reason. Plaintiff claims he suffered from swollen hands and headaches for a few days after this incident. The defendant, in response, claims that plaintiff threatened him and assaulted him with his elbow, at which[*27] point they scuffled and plaintiff was pressed into the wall.

Even assuming that plaintiff's account is true, this incident does not rise to the level of an Eighth Amendment violation. Under the two-part test for determining if such a violation has concerned, there is both an "objective" and "subjective" element.  Farmer v. Brennan, 511 U.S. 825, 834, 128 L. Ed. 2d

811, 114 S. Ct. 1970 (1994). The objective prong is satisfied if the prisoner is subjected to the "unnecessary and wanton infliction of pain." Wilson v. Seiter, 501 U.S. 294, 298, 115 L. Ed. 2d 271, 111 S. Ct. 2321 (1991). The subjective element examines the motive of the prison official: to state an Eighth Amendment claim, the plaintiff must show a culpable state of mind on the part of the part of the defendant. Id.

Plaintiff fails to meet either part of this burden. Although no court approves of physical violence in the correctional system, courts have found certain physical confrontations to be merely de minimis and not violative of the constitution. See, e.g., Barber v. Grow, 929 F. Supp. 820 (E.D. Pa. 1996) (holding that pulling a chair out from under inmate, causing him to fall and suffer [*28] loose teeth, was not an Eighth Amendment violation); Colon v. Wert, 1997 U.S. Dist. LEXIS 3413, 1997 WL 137172 (E.D. Pa. March 21, 1997) (allegation that guard slammed a cell door into prisoner's chest, thereby aggravating per-existing back and neck injuries, found to be de minimis); Robinson v. Link, 1994 U.S. Dist. LEXIS 11950, 1994 WL 463400 (E.D. Pa. Aug. 25, 1994) (allegations that prisoner was handcuffed, dragged along a corridor, and hit in the back were found to be de minimis); Brown v. Vaughn, 1992 U.S. Dist. LEXIS 4221, 1992 WL 75008 (E.D. Pa. March 31, 1992) (allegations that guard struck inmate in the chest and spit on him were de minimis); cf. Hudson v. McMillian, 503 U.S. 1, 10, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992) (holding that a beating given by two prison guards, resulting in minor bruises, swelling, and loosened teeth, where a supervisor stood by and told guards "not to have too much fun," rose beyond de minimis physical violence and constituted a violation of the Eighth Amendment). In light of these rulings it is apparent that even if the Court were to credit plaintiff's version of the event over the sworn deposition of defendant Carl, the physical contact alleged was constitutionally de minimis and thus does [*29] not give rise to an Eighth Amendment violation..

Assuming arguendo that the physical contact in this incident was not de minimis, plaintiff has offered no evidence whatsoever of defendant's motivation other than alleging that the alleged abuse was done "wanturly and sadistically" [sic] to inflict "mental stress and cruelty." Amended Complaint at 7. Because plaintiff has come forward with no evidence of a culpable state of mind on the part of defendant Carl other than bare allegations, plaintiff has failed to meet his burden in light of the contrary evidence offered by defendant. Summary judgment must therefore be granted on behalf of defendant Carl on this claim.

C. Conclusion.

For the foregoing reasons, defendants' Motion for Summary Judgment is granted and judgment is entered in favor of all defendants and against plaintiff.

BY THE COURT:

JAN E. DUBOIS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CLEARY,                               :
                                           :
          Plaintiff,                       :
                                           :        Civil Action No. 1:CV-00-2125
     v.                                    :
                                           :        (Judge Caldwell)
KENNETH KYLER, et al.,                     :
                                           :
          Defendants                       :

### CERTIFICATE OF SERVICE

I hereby certify that I am this day depositing in the U.S. mail a true and correct copy of

the foregoing Defendants' Brief in Support of Motion to Dismiss Plaintiff's Complaint upon the

person(s) and in the manner indicated below.

Service by first-class mail
addressed as follows:

John Cleary, DF-5779                        Howard Imschweiler
SCI-Pittsburgh                              7043 Carlisle Pike, Box 327
P.O. Box 99901                              Carlisle, PA 17013
Pittsburgh, PA 15233

Janelle C. Porr
Clerk Typist 2

PA Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

Dated: March 30, 2001