ORIGINAL

45
5/1/0

FILED
HARRISBURG, PA
APR 3 0 2002
MARY E. D'ANDREA, CLERK
Per

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANAI

JOHN CLEARY,
PLAINTIFF

V.

KENNETH KYLER, ET AL.,
DEFENDANTS

CIVIL ACTION NO.1-CV-00-2125

JUDGE CALDWELL

## PLAINTIFF'S OBJECTIONS TO SUMMARY JUDGEMENT

### I.STATEMENT OF DEFENDANT'S ISSUES PRESENTED

**1.DENIED**
SUGGESTED ANSWER:**NO.**

**2.DENIED**
SUGGESTED ANSWER:**NO.**

3.PLAINTIFF'S CIVIL ACTION SHOULD NOT BE DISMISSED FOR THE FOLLOWING REASONS;

**FIRST AMENDMENT VIOLATION CLAIMS**

STANDING ALONE,ARE RECOGNIZED AND NEED NOT BE BASED ON A DEPRIVATION OF A LIBERTY INTREST.**ALLAH V.SEIVERLING, 229 F.3d 220,224 (3rd CIR.2000)**

**A)**PETITIONER'S INTREST CAUSED BY THE CREATED AND INVESTED OF THE DEFENDANT'S HAVE INCURED INTIMIDATION AND RETALIATION AGAINST THE PLAINTIFF,THAT WHICH IS OF OFFICIAL RECORD FOR THE EXERCISING OF A CONSTITUTIONAL RIGHT,BY ISSUING BOGUS MISCONDUCTS AND FORCING THE PLAINTIFF TO COMPLT WITH THE DEFENDANT'S INTREST.

PLAINTIFF HAS BEEN LOCKED IN THE M.H.U. AND SENT TO THE MENTAL INSTITUTION FOR THE OBSERVATION AND MEDICATION AND/OR OF AND FOR STRESSFUL AND FORCEFUL ACTIONS WHICH STEM FROM THE BRING OF THIS

**4.** <u>**CONSTITUTIONALITY**</u>

"in cases where a prisoner's claim relates to access to resources other than legal assistance itself, an actual injury test can be helpful in determining whether an unconsitutional abridgment of access to the courts has occurred. legal assistance, by contrast - whether in the form of an accessible and adequate library, court appointed or other attorneys or para-professionals - is central, not peripheral, to the right access to the courts that Bounds protects. We believe that in cases, like this case, directly involving prisoner's access to legal knowledge, an actual injury occurs by virtue of a prison's failure to provide the level of assistance required under Bounds". see Peterkin v. Jeffes, 855 F.2d 1021, 1041 (3rd Cir 1988)

IT IS OF THE VERY CONSTITUTIONAL MANDATES OF THE FIRST AMENDMENT THAT PRECLUDES THE DISMISSAL OF THIS CIVIL ACTION AS STATED;

**A)** THE ACTIONS OF THE DEFENDANT'S HAVE BEEN,ARE,AND/OR WERE MENT TO CAUSE AND PRODUCE HARM,INJURY,AND PUNISHMENT UPON THE PLAINTIFF BY DEPRIVATIONS OF A PROTECTED CONSTITUTIONAL RIGHT, WHICH HAS PRODUCED PHSYCOLOGICAL AND MENTALOGICAL INJURIES OF IRREPARABLE HARM TO THE PLAINTIFF, AS THE DEFENDANT'S HAVE ADMITTED TO THE ACTIONS,THEREFORE PRODUCING INJURIOUS GUILT.
YET,THE DEFENDANT'S ACTIONS TOWARDS THE PLAINTIFF WERE COMMITTED OVER A PERIOD OF TWO YEARS,QUITE A DIFFERENCE FROM ANY ONE ISOLATED INCIDENT OF A NEGLIGENT ACT.

**5.**DEFENDANT'S HAVING ADMITTED TO THE ACTIONS OF THE DELIBERATE INDIFFERENCE AND RECKLESS DISREGARD OF THE PLAINTIFF'S PROTECTED CONSTITUTIONAL RIGHTS ALONE ARE SUFFICIENT TO SUBSTAIN AND OVERCOME THE SUMMARY JUDGEMENT OF THE DEFENDANT'S AND TO MOVE FORWARD FOR THE HEARING OF THE CLAIMS TO A JURY.

**6.THE ELEMENTS OF THIS CASE SPEAK FOR THEMSELFS;**

1.THAT YOUR CONSTITUTIONAL OR OTHER RIGHTS WERE VIOLATED,AND
2.THAT THEY WERE VIOLATED BY PERSONS ACTING UNDER THE COLOR OF LAW.

**7.**DEFENDANTS HAVE ACTED INTENTIONALLY AND WRONGFULLY IN INTIMDATION,RETALIATON,AND THE MALICIOUS PROSECUTION OF MISCONDUTS IN RELATION TO THIS CIVIL ACTION AS ONE BEGAN IN MALICE TOWARDS PLAINTIFF WITHOUT PROBABLE CAUSE TO HIS LIBE-RTY,PERSON,AND PROPERTY THAT ARE ARGUABLE THE FAULT OF THE PRISON PERSONNEL.
**9.**THE BASIC ELEMENTS OF THIS CLAIM AND THE OPPOSITION OF THE SUMMARY JUDGEMENT WHICH SHOULD BE ADHERED TO SUSTAIN THE CLAIMS TO MOVE FOWARD FOR A SETTLEMENT OR TRIAL ARE;

1.A DUTY ON THE PART OF THE PRISON PERSONNEL TO FOLLOW A CERTAIN STANDARD OF CARE TO PROTECT PRISONERS FROM UNREASONABLE RISK,
2.A FAILURE BY PRISON PERSONNEL TO PERFORM THAT DUTY,AND
3.AN ACTUAL INJURY CAUSED''OR PROXIMATELY CAUSED''...BY THE FAILURE TO PERFORM THAT DUTY.

**A)**DEFENDANT'S CLAIM IN THEIR MOTION THAT ARE NO FACTUAL MAT-ERIAL FACTS IN DESPUTE. IN REALITY, THERE ARE MANY FACTS IN DISPUTE.

**LIABILITY**

**10.**

PARTIAL/QUALIFIED IMMUNITY;

ONCE AN OFFICIAL...GOVERMENT EMPLOYEE...DENIES A CONSTITUTIONAL RIGHT, **''UNDER THE COLOR OF LAW''** HE OR SHE BECOMES LIABLE TO AN ACTION OF LAW,PREFERABLE **42 U.S.C. 1983 ET SEQ.**

**[a] THE RELEVANT LAW WAS CLEARLY ESTABLISHED, [b] JUDGEMENT ON THE MERITS BECAUSE OF THE FACTUAL DISPUTES,AND [c] BECAUSE THE OFFICIALS RESPONSE TO THE PLAINTIFF'S CONDITION WAS HIGHLY UNREASONABLE,HENCEFORTH, SUMMARY JUDGEMENT SHOULD BE DENIED.RICHARDSON V.McKNIGHT, 521 U.S. 399 (1977).**

**11.**IT IS THE CONSTITUTIONAL MANDATES OF THE DEFENDANT'S DUTY TO EXERCISE EQUAL PROTCTION IN THE WAKE OF CARE,CONTROL,AND CUSTODY OF THE PLAINTIFF...ANY DEVIATION,DEPRIVATION,AND/OR NONCOMPLIANCE OF THE SAID IN THEIR OFFICIAL AND/OR INDIVIDUAL CAPACITIES NEGATES AND NULLIFIES THE PROTECTION OF ANY IMMUNITY**(SHEDS THE CLOAK OF IMMUNITY)**...AND BRINGS FORTH AN ACTION AT LAW FOR THE LIABILITY OF ACTS,ACTIONS,AND /OR INACTIONS OF THEIR CONSTITUTIONAL DUTIES.

**12.**THE DEFENDANT'S BY WAY OF THEIR GUILT OF ACTS AND ACTIONS OF AN ILLEGAL DEPRIVATION OF CONSTITUTIONALLY PROTECTED RIGHTS OF THE FIRST AMENDMENT HAVE ENCURED AN ENORMOUS INJURY UPON THE PLAINTIFF,THE UNITED STATES,COMMONWEALTH OF PENNSYLVANIA,AND THE D.O.C. BY WAY OF COMITTING CRIMINAL ACTS.

CRIMINALLY,INTENTIONALLY.WILLFULLY AND ILLEGALLY TAMPERING .IN A WAY OF DEPRIVATION OF THE UNITED STATES MAIL AND ADDMITTING TO THEIR ACTIONS IN EVERY MOTION THAT WAS FILED INCLUDING THE SUMMARY JUDGEMENT...WITHOUT ANY RECOURSE OF ACTIN AGAINST ANY OF THE DEFENDANT'S,THEIR ASSETS,PROPERTY, REAL PROPERTY,CONVICTION,AND/OR COMPENSATION OF LIABILITY FOR THE ACTS,ACTIONS,AND/OR INACTIONS.

WHEN IT IS OBVIOUS THAT THE DEFENDANT'S ACTED AS A WHOLE,IN CONCERT,...DID IN FACT PERFECT THE SCHEME OF ARTFUL PLANNING IN CHARACTER AND SEEKS TO CONTINUE TO DEFRAUD IN A DELIBERATE FASHION,ALL INTRESTED PARTIES BY DISMISSAL.......

**...OF......SUMMARY .........JUDGEMENT.............**

EVEN IF THE PLAINTIFF DID TALK AND MEET WITH HIS LEGAL COUNSEL,THE CASE THAT WAS LOST,THE ADMITTING OF THE ACTS OF TAMPERING WITH THIS LEGAL INFORMATION WHEN...**1.THE LAW WAS CLEARLY ESTABLISHED THAT THIS ACT WAS INDEED ILLEGAL,...2. THE PLAINTIFF SOUGHT RELIEF IN THE ADMINISTRATIVE PROCEDURE, THE DEFENDANT'S....ALL OF THEM,ACTED SYSTEMATICALLY AND 3.THE DEFENDANT'S....ALL OF THEM,ACTED SYSTEMATICALLY INDIFFERENT TO THE PLAINTIFF'S PLIGHT IN RELIEF,THIS WAS AND HAS BEEN DONE BY WAY OF PERSONAL INVOLVEMENT.**

IT IS THE DUTIES OF THE DEFENDANT'S TO REVIEW THE GRIEVANCE-S OF THE PRISONER'S WHO FILE...THIS IS OF PUBLIC KNOWLEGDE IN THE DISCOVERY PACKET THAT THE DEFENDANT'S FORWARDED.

IT IS VERY DIFFICULT TO EFFECTIVELY ANSWER THESE MOTION'S WHEN THE DEFENDANT'S HAVE NOT COMPLIED WITH THE DISCOVERY REQUEST OF THE PLAINTIFF. THE PLAINTIFF HAS ASKED FOR THE VERY DISCIPLINARY RECORDS OF THE DEFENDANT'S TO NO PREVAIL, AS THIS INFORMATION HAS BECOME AVAILABLE ACCORDING TO **THE POLICY 12.02.02, EFFECTIVE APRIL 14,1999 AND THE ENFORCING OF DC-ADM 004 EFFECTIVE APRIL 4,1999.**

ENCLOSED WITHIN THE VERY MAIL THAT WAS CRIMINALLY TAMPERED WITH,WITH HELD,AND/OR SCANNED WERE THE VERY DEPOSITION OF THE A CIVIL ACTION,THIS DID IN FACT PLAY QUITE A ROLE OF INTIMIDATION AND RETALIATION FOR THAT VERY CIVIL ACTION AND THAT DID RENDER THE PLAINTIFF UNPREPARED FOR THE TRIAL OF THAT VERY CASE....IT IS SO WELL ESTABLISHED THAT A PLAINTIFF OR DEFENDANT IN AN ACTION OF LAW IS DEPRIVED OF HIS RIGHT TO EFFECTIVE LEGAL COUNSEL WHEN THE COUNSEL AND HIS CLIENT ONLY MEET AND PLAN AN INADEQUATE DEFENSE AT THE COURTHOYSE THE VERY DAY OF THE TRIAL,**THEREFORE,**THIS PLAINTIFF,BY WAY OF HIS LEGAL CONSULTANT,STATES THE FACTS OF THIS VERY CIVIL ACTION SPEAKS FOR ITSELF AND SEEKS TO APPLY THE VERY RULES OF THE FEDRAL RULES OF CIVIL PROCEDURE,RULE **56(c).....SETTING FORTH SPECIFIC FACTS OF PROOF THAT THERE ARE GENUINE............... ISSUES FOR TRIAL.**

**APRIL 16,2002**

/S/[signature]---------------------
**JOHN CLEARY**

/S/--------------------------------
**MICHAEL A.COLEMAN**
**P.O.BOX 99901**
**PITTSBURGH,PA.15233**

*91408 61 P.S. § 461.8

PURDON'S PENNSYLVANIA STATUTES AND CONSOLIDATED STATUTES ANNOTATED
PURDON'S PENNSYLVANIA STATUTES ANNOTATED
TITLE 61. PENAL AND CORRECTIONAL INSTITUTIONS
CHAPTER 5B. JOINT COUNTY DETENTION FACILITIES

*Current through Act 2000-86*

## § 461.8. Rules and regulations

The county commissioners of such counties shall, before any **prisoner** may be admitted to this institution, after consulting with the advisory board, make general rules and regulations for the management of the detention facilities which rules and regulations shall be effective after they are approved by the Bureau of Correction.

CREDIT(S)

1999 Main Volume

*1969, Dec. 22, P.L. 394, § 8.*

<General Materials (GM) - References, Annotations, or Tables>

REFERENCES

LIBRARY REFERENCES

1999 Main Volume

Principal and Surety 🔑3104.
WESTLAW Topic No. 309.
**C.J.S. Prisons** and **Rights** of **Prisoners** §§ **7, 122.**

Pennsylvania Department of Justice Sentence Status Procedures (DC-9) governing [illegible] "procedures involving common sentence status problems."

Copyright (c) West Group 2001 No claim to original U.S. Govt. works

*100172 71 P.S. § 310-5

**PURDON'S PENNSYLVANIA STATUTES AND CONSOLIDATED STATUTES ANNOTATED PURDON'S PENNSYLVANIA STATUTES ANNOTATED TITLE 71. STATE GOVERNMENT I. THE ADMINISTRATIVE CODES AND RELATED PROVISIONS CHAPTER 2. THE ADMINISTRATIVE CODE OF 1929 ARTICLE IX-B. POWERS AND DUTIES OF THE DEPARTMENT OF CORRECTIONS**

*Current through Act 2000-86*

**§ 310-5. (Adm. Code § 905-B). Establishment of bureau**

There is hereby established a separate bureau within the Department of Corrections, which bureau shall provide centralized administrative services relating to inmate education and training, including:

(1) Provision of education and training.

(2) Staff supervision to include staff discipline in accordance with applicable collective bargaining agreements, department policies and principles of due process.

(3) Curriculum and program development and related matters.

**CREDIT(S)**

**2000 Electronic Update**

*1929, April 9, P.L. 177, No. 175, § 905-B, added 1999, June 22, P.L. 99, No. 15, § 1, effective July 1, 1999.*

<General Materials (GM) - References, Annotations, or Tables>

Copyright (c) West Group 2001 No claim to original U.S. Govt. works

4 Pa. Code § 7.173, Required action when an employe is formally charged with criminal conduct related to his employment with the Commonwealth or which constitutes a felony. **Page 1**

***1275** 4 Pa. Code § 7.173

PENNSYLVANIA ADMINISTRATIVE CODE
TITLE 4. ADMINISTRATION
PART I. GOVERNOR'S OFFICE
CHAPTER 7. MISCELLANEOUS PROVISIONS
SUBCHAPTER K. CODE OF CONDUCT FOR APPOINTED OFFICIALS AND STATE EMPLOYES
**CRIMINAL** CHARGES

*Current through Supp. 315 (February, 2001)*

## § 7.173. Required action when an employe is formally charged with **criminal** conduct related to his employment with the Commonwealth or which constitutes a felony.

As soon as practicable after an employe has been formally charged with **criminal** conduct related to his employment with the Commonwealth or which constitutes a felony, the employe shall be suspended without pay. If the charge results in conviction in a court of **law**, the employe shall be terminated.

Source

*The provisions of this § 7.173 amended by Executive Order No. 1980-18, dated and effective May 16, 1984, 14 Pa.B. 2036. Immediately preceding text appears at serial page (55493).*

<General Materials (GM) - References, Annotations, or Tables>

ANNOTATIONS

NOTES OF DECISIONS

Administrative Hearings

An at-will public employe does not have a property interest or privilege in continued employment such that the employe would be entitled to an administrative hearing on the dismissal from employment. Werner, Jr. v. Zazyczny , 681 A.2d 1331 (Pa. 1996).

Constitutionality

The State did not violate the Due Process Clause of the Fourteenth Amendment by failing to provide a suspension notice or hearing prior to suspending a tenured **public** employe who had been arrested on **criminal** drug charges. Gilbert v. Homar , 117 S. Ct. 1807 (1997).

Construction with Statutes

The provisions of this Governor's Executive Order did not take precedence over contrary statutory provisions. Department of Corrections v. Brumfield , 594 A.2d 852 (Pa. Cmwlth. 1991).

Suspension Proper

State employee under **criminal** indictment for felony was properly suspended under this regulation pending disposition of the charges. Boykin v. Bloomsburg University , 893 F. Supp. 378 (M.D.Pa.), summary judgment granted, remanded, 893 F. Supp. 409 (M.D. 1995).

***1276** Mine inspector's felony conviction for copyright infringement could call into question the inspector's integrity and adversely affect the inspector's reputation with the general public with whom he dealt with and, therefore, the inspector was justly dismissed for just cause. Aiello v. Department of Environmental Resources , 551 A.2d 664 (Pa. Cmwlth. 1988).

REFERENCES

CROSS REFERENCES

This section cited in 4 Pa. Code § 7.171 (relating to procedures); 4 Pa. Code § 39.12 (relating to **criminal** cases); and 22 Pa. Code § 233.11 (relating to code of conduct and Commissioners' rights).

Copyright (c) West Group 2001 No claim to original U.S. Govt. works

perations, had never
z; that a confidential
it GTC for nearly two
of Sureaz; that Su-
generally affixed by
1982 Latin, who had
orted to sell Latin's
n and lease property
ig his address; and
to get in touch with
suspicion created by
amply confirmed by
eral tax filings, social
otor vehicle records
ed States indicating
hat name existed.

it as a whole, and the
al investigation itself,
ı) that Sureaz did not
l notarized the signa-
Sureaz, and (c) that
ne were unreported,
ıs in Nanni's immun-
ny, we conclude that
erly found that the
mony in the search
ituting a violation of
nt rights, was harm-
le doubt. There can
that even absent that
ıent would have ap-
ınts, probable cause
of the warrants, and
ave issued them.

ISION

all of Nanni's argu-
d have found in them
The judgment of con-

**Polyns BIEREGU, Appellant,**

**v.**

**Janet RENO; L. Yearby; G. Berman, All Employees of Mail Room Staffs.**

**No. 94–5719.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 2, 1995.

Decided July 11, 1995.

Sur Petition for Rehearing Sept. 11, 1995.

Inmate brought action against prison officials, alleging that they violated his constitutional rights by repeatedly opening his properly marked incoming legal mail outside of his presence. The United States District Court for the District of New Jersey, Jerome B. Simandle, J., entered summary judgment in favor of officials, and inmate appealed. The Court of Appeals, Sarokin, Circuit Judge, held that: (1) prison's pattern and practice of opening prisoner's properly marked incoming court mail outside his presence impinges upon his constitutional rights to free speech and court access and no showing of actual injury is necessary to establish that rights have been infringed; (2) single, inadvertent opening of properly marked legal mail outside prisoner's presence may not infringe prisoner's right to free speech nor his right to court access absent showing of actual injury; and (3) officials were not entitled to qualified immunity.

Affirmed in part and reversed in part.

Scirica, Circuit Judge, filed concurring opinion.

**1. Federal Courts** 🔑**766**

Court of Appeals' review of district court's grant of summary judgment is plenary. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**2. Federal Courts** 🔑**766, 802**

When reviewing district court's grant of summary judgment, Court of Appeals considers whether there are genuine issues as to material facts and whether defendants are entitled to judgment as a matter of law and resolves all reasonable doubts and draws all reasonable inferences in favor of nonmovant. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**3. Prisons** 🔑**4(1)**

Confinement does not result in inmate's forfeiture of all constitutional rights.

**4. Prisons** 🔑**4(6)**

Prison walls do not bar free citizens from exercising their own constitutional rights by reaching out to those on the "inside."

**5. Prisons** 🔑**4(6)**

Prison officials must weigh need for internal order and security against the rights of prisoners, as well as the constitutional rights afforded those on the outside who seek to enter prison environment, in person or through the written word.

**6. Civil Rights** 🔑**135**

Analysis of whether inmate has alleged constitutional violation involves two steps: whether any of inmate's constitutional rights are infringed by the alleged conduct and, if so, whether that infringement rises to the level of a constitutional violation given the specialized standard of review applied to prison regulations and practices.

**7. Constitutional Law** 🔑**90.1(1.3)**

**Prisons** 🔑**4(9)**

Prisoners do not forfeit their First Amendment rights to use of the mails. U.S.C.A. Const.Amend. 1.

**8. Constitutional Law** 🔑**90.1(1.3)**

**Prisons** 🔑**4(9)**

Prison officials violate inmate's First Amendment rights when they refuse to deliver incoming personal mail simply because it is written in language other than English or when they refuse to deliver mail that allegedly could be emotionally disturbing to inmate, in the absence of psychiatric determination that mail would indeed be upsetting. U.S.C.A. Const.Amend. 1.

**9. Constitutional Law ⇐90.1(1.3)**
**Prisons ⇐4(12)**

Prison's pattern and practice of opening properly marked incoming "court mail," which is correspondence between inmate and state or federal judge, clerk's office or other courthouse address, outside inmate's presence infringes communication protected by the right to free speech; such practice chills protected expression and may inhibit inmate's ability to speak, protest, and complain openly, directly, and without reservation to court. U.S.C.A. Const.Amend. 1.

See publication Words and Phrases for other judicial constructions and definitions.

**10. Constitutional Law ⇐90.1(1.3)**

In the context of the First Amendment and prison mail, "censorship" means altering or withholding delivery of particular letter.

See publication Words and Phrases for other judicial constructions and definitions.

**11. Constitutional Law ⇐90.1(1.3)**

Single instance of damaged mail does not rise to the level of constitutionally impermissible censorship in the context of the First Amendment and prison mail. U.S.C.A. Const.Amend. 1.

**12. Constitutional Law ⇐91**

First Amendment right to petition is birthplace for the right of court access. U.S.C.A. Const.Amend. 1.

**13. Constitutional Law ⇐328**

As to civil actions, Sixth Amendment is not promising place for genealogical research on the right of court access. U.S.C.A. Const. Amend. 6.

**14. Constitutional Law ⇐305(2)**

Among the progeny of the due process clause is the right of court access. U.S.C.A. Const.Amends. 5, 14.

**15. Civil Rights ⇐235(7)**

Because defendants were federal officials, inmate's reliance on Fourteenth Amendment's due process clause for the right of court access was misplaced, however, Court of Appeals would construe inmate's pro se complaint liberally to allege that repeated opening of his properly marked incoming court mail outside his presence violated his Fifth Amendment due process right to court access. U.S.C.A. Const.Amends. 5, 14.

**16. Prisons ⇐4(2.1)**

Court must determine whether the means of access give prisoners reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts; prison measures are to be evaluated individually and in sum.

**17. Constitutional Law ⇐328**

Ancillary aspects of court access which may affect merely comfort or convenience without depriving prisoner of access to the courts require a showing of actual injury, but prison practices that are central, not peripheral, to the right of access to the courts do not.

**18. Constitutional Law ⇐42.2(1)**

Inmate who alleged that prison mail room employees opened his properly marked court mail outside his presence, thereby damaging briefing schedule, did not demonstrate that he suffered actual injury regarding court access; inmate offered no evidence to establish that damage obscured dates nor to dispute prison officials' contention that he received separate notice from clerk's office informing him that he had 14 days to file brief or else appeal would be dismissed.

**19. Constitutional Law ⇐42.2(1)**

Prison's pattern and practice of opening prisoner's properly marked incoming court mail outside his presence is more central than ancillary to the right of court access and thus, where there is pattern and practice of opening inmate's mail outside his presence, no showing of actual injury is necessary for inmate to show that the right has been infringed, but showing of actual injury is required where opening of inmate's mail is isolated and inadvertent and determination as to whether inmate has demonstrated custom or practice of opening mail is fact-bound inquiry.

20. Constitutional Law ⇐328
Prisons ⇐4(12)

Reading of prisoner's legal mail by prison mail room employees infringes prisoner's right of court access even more than simply opening and inspecting mail.

21. Constitutional Law ⇐328
Prisons ⇐4(12)

Only way to ensure that inmate's mail is not read when opened by prison mail room employees, and thus to vindicate inmate's right to access to the courts, is to require that it be done in presence of inmate.

22. Constitutional Law ⇐328
Prisons ⇐4(12)

Interference with "attorney mail," the correspondence between inmate and attorney, infringes the right of court access even more than interference with court mail, whether the correspondence relates to criminal conviction, subsequent collateral proceeding, or civil suit to protect inmate's constitutional rights, and thus, of all communications, "attorney mail" is the most sacrosanct.

See publication Words and Phrases for other judicial constructions and definitions.

23. Constitutional Law ⇐328

Right of court access guarantees the privacy of attorney-client communications.

24. Constitutional Law ⇐90.1(1.3), 328
Prisons ⇐4(12)

Prison's pattern and practice of opening inmate's properly marked incoming court mail outside his presence impinges upon his constitutional rights to free speech and court access and this determination does not depend on the mere violation by prison officials of special mail regulation, which by itself does not establish constitutional violation. 28 C.F.R. § 540.18.

25. Constitutional Law ⇐90.1(1.3)

To justify interference with prisoner's mail, government must show important or substantial governmental interest unrelated to the suppression of expression and that suppression was no greater than is necessary or essential to protection of the particular governmental interest involved.

26. Constitutional Law ⇐90.1(1.3), 328
Prisons ⇐4(12)

To determine whether prison's pattern and practice of opening inmate's properly marked incoming court mail outside his presence, conduct which infringes inmate's constitutional rights to free speech and court access, rises to the level of a constitutional violation, court will ask the following questions: whether there is rational connection between the infringing prison practice and valid government interest; whether alternate means of exercising the rights at issue are available; and whether accommodation of the exercise of inmate's constitutional rights burdens prison.

27. Constitutional Law ⇐90.1(1.3), 328
Prisons ⇐4(12)

Prison's pattern and practice of opening inmate's properly marked incoming court mail outside his presence violates the Constitution; to suggest that repeatedly opening incoming court mail outside inmate's presence advances legitimate interest in institutional security would overreach, prison's practice of opening inmate's incoming court mail is not reasonably related to legitimate interest, and to accommodate inmate's rights to free speech and court access by opening his incoming court mail only in his presence places no burden at all on prison guards and on allegation of prison resources.

28. Constitutional Law ⇐90.1(1.3), 328

Prison's single, inadvertent opening of inmate's properly marked legal mail outside inmate's presence may not infringe inmate's right to free speech nor his right to court access absent showing of actual injury.

29. Civil Rights ⇐214(2)

Under the doctrine of qualified immunity, government officials will not be liable under § 1983 if their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known and for right to be clearly established, contours of the right must be sufficiently clear that reasonable official would understand that what he is doing violates that right. 42 U.S.C.A. § 1983.

30. **Civil Rights** ⚷214(2)

If law is not established clearly when government official acts, he is entitled to qualified immunity from § 1983 liability because he could not reasonably be expected to anticipate subsequent legal developments. 42 U.S.C.A. § 1983.

31. **Civil Rights** ⚷214(2)

Absence of previous decision from Court of Appeals on constitutionality of the conduct at issue is not dispositive on whether the law was clearly established for purpose of determining whether government official is entitled to qualified immunity from § 1983 liability. 42 U.S.C.A. § 1983.

32. **Civil Rights** ⚷214(7)

Prison officials were not entitled to qualified immunity with respect to inmate's claim alleging that officials violated his constitutional rights by repeatedly opening his properly marked incoming legal mail outside of his presence; although Court of Appeals had not previously ruled on this precise issue, contours of officials' legal obligations under the regulations and Constitution were sufficiently clear that reasonable official would understand that repeatedly opening inmate's properly marked incoming legal mail outside his presence violated the Constitution.

---

Polyns Bieregu, Fairton, NJ, appellant pro se.

Faith S. Hochberg, U.S. Atty., Paul A. Blaine, Asst. U.S. Atty., Camden, NJ, for appellees.

BEFORE: MANSMANN, SCIRICA, and SAROKIN, Circuit Judges.

## OPINION OF THE COURT

SAROKIN, Circuit Judge:

A prisoner brought this action *pro se* against prison officials, alleging that by repeatedly opening properly marked incoming legal mail outside of his presence, those officials had violated his constitutional rights.[1] Holding that defendants enjoyed qualified immunity because the law in this area was unsettled in our circuit, the district court granted summary judgment in favor of the officials. Plaintiff appeals.

### I.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331. Plaintiff filed a timely notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

Plaintiff Polyns Bieregu is incarcerated at the federal prison in Fairton, New Jersey. He alleges that on numerous occasions and outside his presence, prison mailroom employees opened and read mail addressed to him from federal judges, in violation of the Constitution, federal regulations, and internal Bureau of Prisons ("BOP") guidelines.

The federal regulatory framework for handling prisoner mail is straightforward. The regulations distinguish between incoming "general mail," which the Warden must open and inspect and may read, and incoming "special mail," which the Warden may open "only in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail." 28 C.F.R. §§ 540.14(a), 540.18(a).[2] Special mail includes incoming mail from federal and state courts. § 540.2(c). In order to receive the special handling, incoming special mail must be marked "Special Mail—Open only in the presence of the inmate" and

1. Plaintiff also named Attorney General Janet Reno as a defendant and alleged two state law negligence claims against all defendants. On appeal, he mentions the dismissal of neither the state law claims nor the federal claims as to Attorney General Reno, and hence we need not reach these issues. We note in any event that (a) the district court held that tort claims against federal employees may arise only under the Federal Tort Claims Act, 28 U.S.C. § 1346; and (b) to be liable for a constitutional violation a defendant must have some causal connection to the wrongdoing. *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1152–54 and n. 13 (3d Cir.1995); *Rizzo v. Goode,* 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976). Plaintiff has offered no evidence that the Attorney General in any way caused, consented to, or tacitly approved the conduct of the prison officials herein.

2. Unless otherwise noted, all subsequent references to federal regulations are to 28 C.F.R.

have a clearly identified sender. §§ 540.2(c), 540.18(a). According to a BOP Policy Statement, however, mail "from the chambers of a federal judge ... should be given special handling," even when it lacks the precise marking. Federal Bureau of Prisons, *Program Statement* No. 5265.08 (October 1, 1985), § 13(a). For convenience, we will refer to correspondence between an inmate and attorney as "attorney mail" and to correspondence between an inmate and a state or federal judge, clerk's office, or other courthouse address as "court mail." We use the phrase "legal mail" as a general term including both attorney and court mail.

Plaintiff does not attack the general BOP scheme for handling mail, nor the specific authority of BOP employees to open incoming legal mail in his presence. Rather, plaintiff contends that in repeatedly opening court mail outside his presence, the mailroom employees violated his rights to "confidential and uncensored commications" [sic] and to "access to the court" under the First, Fourth, Sixth, and Fourteenth Amendments. As approved in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971), plaintiff sues directly under the Constitution.

In response to defendants' motion for summary judgment, plaintiff supplied evidence that five pieces of mail from federal judges were opened outside his presence within a three month period. The mail concerned civil proceedings to which plaintiff was a party. Plaintiff alleges further that on another occasion, the mailroom employees opened and damaged a scheduling order in a civil forfeiture proceeding. Bieregu claims that because the order was damaged, he failed to file a timely brief and his appeal was dismissed.

An internal review by the prison determined that on at least three of the five alleged occasions, mailroom employees did open plaintiff's properly marked legal mail outside his presence. The employees claim they did not read the mail and submitted affidavits denying they had opened it intentionally.

The district court concluded "we cannot say that a reasonable trier of fact would be compelled to find that defendants' actions were the result of mere negligence." *Bieregu v. Reno,* No. 94-2775, slip op. (D.N.J. Nov. 4, 1994), at 5. It went on to conclude that "a policy or practice of opening properly identified legal mail outside the presence of the inmate" is a constitutional violation. *Id.* at 9. Nevertheless, the court determined that because the law in this circuit is not clearly established as to whether such conduct rises to the level of a constitutional violation, the officials were entitled to qualified immunity.

[1, 2] Our review of a district court's grant of summary judgment is plenary. *In re City of Philadelphia Litigation,* 49 F.3d 945, 960-61 (3d Cir.1995). We consider whether there are genuine issues as to material facts and whether defendants are entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Wisniewski v. Johns-Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987). In so determining, we will resolve all reasonable doubts and draw all reasonable inferences in favor of the nonmoving party. *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307, n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984).

## II.

[3, 4] By definition a sentence of imprisonment involves a loss of one's liberty, and by necessity a substantial loss of one's privacy. Yet confinement does not result in the forfeiture of all constitutional rights. Indeed, the closing of the prison gates upon an inmate is punishment enough in most instances, and any attempt to isolate inmates completely from the outside world might not only violate their constitutional rights, but would disserve the interests of a society hoping to release prisoners to become law-abiding citizens. Thus the Supreme Court has reminded us that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). *See also Wolff v.*

*McDonnell,* 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974) ("There is no iron curtain drawn between the Constitution and the prisons of this country"). Nor do those walls "bar free citizens from exercising their own constitutional rights by reaching out to those on the 'inside.'" *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989).

Accordingly, the Supreme Court has recognized that persons convicted of serious crimes and confined to penal institutions retain the right to petition the government for the redress of grievances, *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); the right to be free from racial segregation, *Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968); the right to due process, *Wolff, supra;* the right of free speech, *Abbott,* 490 U.S. at 410, n. 9, 109 S.Ct. at 1880 n. 9; the right of meaningful access to the courts, *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977); and the right to exercise substantial religious freedom, *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987).

[5] The Court has also recognized, however, that the rights of prisoners "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Abbott,* 490 U.S. at 407, 109 S.Ct. at 1878 (quoting *Turner,* 482 U.S. at 85, 107 S.Ct. at 2259). Prison officials must weigh the need for internal order and security against the rights of prisoners, as well as the constitutional rights afforded "those on the 'outside' who seek to enter that environment, in person or through the written word." *Abbott,* 490 U.S. at 407, 109 S.Ct. at 1878.

Courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners and non-prisoners. As former Chief Judge Higginbotham has written for our court, "'courts have learned from repeated investigation and bitter experience that judicial intervention is indispensable if constitutional dictates—not to mention considerations o[f] basic humanity—are to be observed in th[e] prisons.'" *Peterkin v. Jeffes,* 855 F.2d 1021[,] 1033 (3d Cir.1988) (quoting *Rhodes v. Chap[-] man,* 452 U.S. 337, 354, 101 S.Ct. 2392, 2403[,] 69 L.Ed.2d 59 (1981) (Brennan, J. concur[-] ring)).

Against this background we turn to th[e] conduct of defendants regarding plaintiff'[s] incoming court mail.

III.

[6] The district court granted summary judgment on the grounds that defendants enjoyed qualified immunity, but before reaching this issue we must first determine whether plaintiff has alleged a constitutional violation. *In re City of Philadelphia,* 49 F.3d at 960–61; *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792–93, 114 L.Ed.2d 277 (1991). This analysis involves two steps: determining (1) whether any of plaintiff's constitutional rights are infringed by the conduct alleged herein; and if so, (2) whether that infringement rises to the level of a constitutional violation, given the specialized standard of review applied to prison regulations and practices.

A number of courts of appeals have determined that opening properly marked incoming attorney or court mail outside a prisoner's presence, or reading such mail, infringes the Constitution. Though finding a constitutional violation, the Seventh, Eighth, and Eleventh Circuits identified no right in particular. *See Castillo v. Cook County Mail Room Department,* 990 F.2d 304, 307 (7th Cir.1993) (per curiam) (allegation that prison officials opened three pieces of incoming court mail outside inmate's presence states "colorable claim" of constitutional violation); *Lemon v. Dugger,* 931 F.2d 1465, 1468 (11th Cir.1991) (prison official violated prisoner's "constitutional right not to have his mail read" where one piece of incoming attorney mail opened and read in inmate's presence); *Jensen v. Klecker,* 648 F.2d 1179, 1182–83 (8th Cir.1981) (allegations that prison officials had deliberately and repeatedly opened incoming and outgoing attorney mail outside prisoner's presence sufficient to defeat offi-

cials' motion for summary judgment). The Sixth and Tenth Circuits looked to the First Amendment. *See Lavado v. Keohane,* 992 F.2d 601, 609–10 (6th Cir.1993) ("opening/reading" incoming court mail outside prisoner's presence in arbitrary or capricious fashion violates First Amendment); *Ramos v. Lamm,* 639 F.2d 559, 582 (10th Cir.1980) (opening outgoing court and attorney mail outside presence of inmate violates the First Amendment), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981). The Second Circuit also relied on the First Amendment, but on the Petition Clause in particular. *See Washington v. James,* 782 F.2d 1134, 1139 (2d Cir.1986) (allegation that prison officials repeatedly opened outgoing attorney mail states claim for violation of rights to petition and to correspond with legal counsel). The Fifth Circuit relied on a constitutional right of access to the courts, arising under the Due Process Clause. *See Taylor v. Sterrett,* 532 F.2d 462, 475 (5th Cir.1976) (prisoner's right of access "requir[es] that incoming prisoner mail from courts ... be opened only in the presence of the inmate"). *Taylor,* however, may no longer be good law in the Fifth Circuit. *See Brewer v. Wilkinson,* 3 F.3d 816, 825 (5th Cir.1993) (opening incoming attorney or court mail outside inmate's presence does not violate prisoner's rights to free speech or court access), *cert. denied,* — U.S. —, 114 S.Ct. 1081, 127 L.Ed.2d 397 (1994); *Walker v. Navarro County Jail,* 4 F.3d 410, 413 (5th Cir.1993). Lastly, in the Ninth Circuit, Judge Reinhardt has argued in dissent that the right to privacy was at stake. *Stevenson v. Koskey,* 877 F.2d 1435, 1443 (9th Cir.1989) (Reinhardt, J., dissenting) ("reading legal mail is a violation of the prisoner's privacy rights").

Similarly, district courts in our circuit, like the one herein, have concluded that to read legal mail or to open it outside a prisoner's presence violates the Constitution, though they too have not agreed as to the constitutional rights at issue. *See Jordan v. Fauver,* 881 F.Supp. 947, 952–54 (reading legal mail in presence of inmate violates his right to court access) (D.N.J.1995); *Proudfoot v. Williams,* 803 F.Supp. 1048, 1052 (E.D.Pa. 1992) (opening and scanning outgoing attorney and court mail in presence of prisoner violates inmate's rights to petition, counsel, and court access); *Thornley v. Edwards,* 671 F.Supp. 339, 342 (M.D.Pa.1987) (opening incoming court mail outside presence of inmate violates his rights to counsel and court access), *mot. denied, summ. judg. granted,* 1988 WL 188333 (M.D.Pa.1988); *Carty v. Fenton,* 440 F.Supp. 1161, 1162–63 (M.D.Pa. 1977) (opening incoming court mail outside inmate's presence violates his right to court access).

Only once have we confronted the question of whether opening and reading an inmate's legal mail violates the Constitution. *See Allen v. Aytch,* 535 F.2d 817 (3d Cir.1976). We did not reach the issue, however, relying instead on Justice Brandeis's concurrence in *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) to remand for consideration of a non-constitutional argument not raised in the district court. *Allen,* 535 F.2d at 823.

### A. Freedom of speech

As Justice Holmes recognized years ago, "[t]he United States may give up the Post Office when it sees fit, but while it carries it on the use of the mails is almost as much a part of free speech as the right to use our tongues." *United States ex rel. Milwaukee Social Democratic Publishing Co. v. Burleson,* 255 U.S. 407, 437, 41 S.Ct. 352, 363, 65 L.Ed. 704 (1921) (Holmes, J., dissenting). Thus the Supreme Court has generally treated interference with the mail as implicating the First Amendment right to free speech. *See Bolger v. Youngs Drug Prods. Corp.,* 463 U.S. 60, 69 & n. 18, 103 S.Ct. 2875, 2881–82 & n. 18, 77 L.Ed.2d 469 (1983); *Blount v. Rizzi,* 400 U.S. 410, 416, 91 S.Ct. 423, 428, 27 L.Ed.2d 498 (1971); *Lamont v. Postmaster General,* 381 U.S. 301, 307–08, 85 S.Ct. 1493, 1496–97, 14 L.Ed.2d 398 (1965).

In *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court invalidated California prison regulations which provided for the routine censorship of inmates' outgoing personal correspondence, on the grounds that the regulations violated the free speech rights of the prisoners' correspondents. 416 U.S. at 408,

94 S.Ct. at 1809 ("[w]hatever the status of a prisoner's claim to uncensored correspondence with an outsider, it is plain that the latter's interest is grounded in the First Amendment's guarantee of freedom of speech"). *See also Wolff,* 418 U.S. at 576–77, 94 S.Ct. at 2984–85.

In the years after *Procunier* and *Wolff,* however, the Court abandoned the distinction between the free speech rights of inmates and their correspondents on the outside. *Abbott,* 490 U.S. at 410, n. 9, 109 S.Ct. at 1880 n. 9 ("any attempt to forge separate standards for cases implicating the [First Amendment] rights of outsiders [and inmates] is out of step with the intervening decisions").

[7, 8] Clearly, then, prisoners do not forfeit their First Amendment rights to use of the mails. For example, prison officials violate a prisoner's First Amendment rights when they refuse to deliver incoming personal mail simply because it is written in a language other than English. *Ramos,* 639 F.2d at 581. Similarly, officials violate the First Amendment when they refuse to deliver mail that allegedly could be emotionally disturbing to an inmate, in the absence of a psychiatric determination that the mail would indeed be upsetting. *Id.* at 581–82.

[9] The Fifth Circuit has concluded that "[t]he precise contours of a prisoner's right to free speech are ... obscure." *Brewer,* 3 F.3d at 821. However, we need not determine the exact outer limits of a prisoner's right to free speech, for we are satisfied that a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech. Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court.

Here, plaintiff's complaint alleged that on fifteen occasions defendants opened his legal mail outside his presence. In response to this motion, he supplied evidence documenting five instances in which his incoming court mail was opened in a three month period. Defendants admit that on three of the five occasions documented by plaintiff, they did open his incoming court mail outside his presence. Because we must view the facts in the light most favorable to plaintiff, the nonmoving party, and draw all reasonable inferences therefrom, we conclude that there is sufficient evidence in the record for a reasonable person to infer that there exists a pattern and practice of opening plaintiff's incoming court mail outside his presence.

[10, 11] Plaintiff also alleges that defendants censored his mail. In the context of the First Amendment and prison mail, however, censorship means altering or "withhold[ing] delivery of a particular letter." *Procunier,* 416 at 417, 94 S.Ct. at 1814. *See Wolff,* 418 U.S. at 576, 94 S.Ct. at 2984 ("freedom from censorship is not equivalent to freedom from inspection or perusal"). *But see Taylor,* 532 F.2d at 469 (opening prisoner's mail is "indirect censorship"). Plaintiff points to only one occasion in which his mail was damaged, namely when the briefing schedule was cut. We decline to hold that a single instance of damaged mail rises to the level of constitutionally impermissible censorship, and hence this allegation cannot withstand the motion for summary judgment.

### B. Right to meaningful court access

The Supreme Court has held that "prisoners have a constitutional right of access to the courts." *Bounds,* 430 U.S. at 821, 97 S.Ct. at 1494. *See also Johnson,* 393 U.S. at 489, 89 S.Ct. at 750–51; *Wolff,* 418 U.S. at 577–80, 94 S.Ct. at 2985–87. The Court explained that the access must be "adequate, effective, and meaningful" to comport with the Constitution. *Bounds,* 430 U.S. at 822, 97 S.Ct. at 1495. Yet, as the Fifth Circuit has observed, "[p]erhaps because their textual footing in the Constitution is not clear, these principles [of court access] suffer for lack of internal definition and prove far easier to state than to apply." *Morrow v. Harwell,* 768 F.2d 619, 623 (5th Cir.1985).

#### 1. Source of the right

The *Bounds* decision made only one reference to a particular constitutional source, describing the prisoners' complaint as alleg-

ing a violation of their "Fourteenth Amendment rights." 430 U.S. at 818, 97 S.Ct. at 1493. Since that decision, courts have concluded that the right arises under the First Amendment right to petition, *Proudfoot,* 803 F.Supp. at 1052; *Jackson v. Procunier,* 789 F.2d 307, 310 (5th Cir.1986); *Nordgren v. Milliken,* 762 F.2d 851, 853 (10th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985); *Milhouse v. Carlson,* 652 F.2d 371, 373 (3d Cir.1981); *Washington,* 782 F.2d at 1139; the Sixth Amendment right to counsel, *Proudfoot,* 803 F.Supp. at 1052; *Thornley,* 671 F.Supp. at 342; *Stover v. Carlson,* 413 F.Supp. 718, 722 (D.Conn. 1976); and the Due Process Clause. *Jackson,* 789 F.2d at 310; *Nordgren,* 762 F.2d at 853. Adding more spice to the soup, the Supreme Court has referred to the "equal protection guarantee of 'meaningful access.'" *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987). There is also a theory that meaningful court access is protected under the Privileges and Immunities Clause. *See Nordgren,* 762 F.2d at 853. We have previously noted the various theories, without making our own selection. *See Peterkin,* 855 F.2d at 1036, n. 18.

### a. Right to petition

The First Amendment's right to petition "has a pedigree independent of—and substantially more ancient than—the freedoms of speech and press." *San Filippo v. Bongiovanni,* 30 F.3d 424, 443 (3d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995). In colonial times, it referred primarily to the power of the people to petition their legislatures. In fact, a significant amount of colonial legislation was initiated by citizen petition. Akhil R. Amar, *The Bill of Rights as a Constitution,* 100 Yale L.J. 1131, 1156 (1991). *See also* Note, *A Short History of the Right to Petition Government for the Redress of Grievances,* 96 Yale L.J. 142 (1986).[3]

[12] In the modern era, the Supreme Court has held that the Petition Clause encompasses a right of access not only to the legislative branch, but to the courts as well. *California Motor Transport Co. v. Trucking, Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611–12, 30 L.Ed.2d 642 (1972); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 2168–69, 76 L.Ed.2d 277 (1983) ("the right of access to the courts is an aspect of the First Amendment right to petition"). Thus in *San Filippo* we treated the filing of a lawsuit as implicating the Petition Clause. 30 F.3d at 440, n. 18. In its most recent examination of the clause, the Supreme Court appeared to treat the right to petition as subsumed within the broad First Amendment right to freedom of expression. *McDonald v. Smith,* 472 U.S. 479, 482, 105 S.Ct. 2787, 2789–90, 86 L.Ed.2d 384 (1985) (right to petition is merely "an assurance of a particular freedom of expression"). In *San Filippo,* in the context of public employment, we nevertheless distinguished between a petition and mere speech to hold that "filing a non-sham petition is not a constitutionally permissible ground for discharge." 30 F.3d at 443. We conclude that the First Amendment right to petition, as currently interpreted, is a birthplace for the right of court access.

### b. Right to counsel

[13] The plain language of the Sixth Amendment is limited to criminal proceedings,[4] and thus, for example, the Supreme

3. At the founding, the Petition Clause also implied a "congressional duty to respond." Amar, *Bill of Rights,* 100 Yale L.J. at 1156. In the Civil War era, however, Congress enacted rules abolishing the duty to respond, a change later sanctioned by the Supreme Court. Note, *A Short History,* 96 Yale L.J. at 164; *Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 465, 99 S.Ct. 1826, 1828, 60 L.Ed.2d 360 (1979) (per curiam) (constitution does not require government "to listen [or] to respond" to citizen petition); *Minnesota State Bd. for Community Colleges v. Knight,* 465 U.S. 271, 285, 104 S.Ct. 1058, 1066, 79 L.Ed.2d 299 (1984).

4. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence." U.S. Const., Am. VI.

Court has determined that the Amendment's guarantee of a right to counsel does not extend to habeas corpus proceedings, which are civil. *Finley,* 481 U.S. at 555, 107 S.Ct. at 1993. Moreover, in *Wolff,* the most recent Supreme Court examination of the status of a prisoner's legal mail, the Court held that "[a]s to the Sixth Amendment, its reach is *only* to protect the attorney-client relationship from intrusion in the *criminal setting.*" 418 U.S. at 576, 94 S.Ct. at 2984 (emphasis added). *See also Taylor,* 532 F.2d at 472. Accordingly, as to civil actions, we conclude that the Sixth Amendment is not a promising place for genealogical research on the right of court access.

Here, plaintiff characterizes the five pieces of opened mail as regarding "a civil rights action" against prison officials. Pl.Br. at 2. Two of the letters were apparently related to *Bieregu v. Reno,* No. 93–4894 (D.N.J.), a civil action. In addition, the briefing schedule allegedly opened and damaged concerned a civil forfeiture case. Certainly plaintiff offered no evidence in response to the motion for summary judgment indicating that the opened mail involved a criminal proceeding. Thus we will explore plaintiff's Sixth Amendment claim no further.

**c. Due process**

[14] As noted, the *Bounds* decision characterized the plaintiffs' allegations of a denial of court access as arising under the Fourteenth Amendment. 430 U.S. at 818, 97 S.Ct. at 1493. In *Procunier,* the Court held that California's mail censorship regulations violated the "constitutional guarantee of due process of law [which] has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." 416 U.S. at 419, 94 S.Ct. at 1814. *See also Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641–42, 85 L.Ed. 1034 (1941) (invalidating prison official's refusal to mail inmate's habeas corpus petition); *Wolff,* 418 U.S. at 576, 94 S.Ct. at 2984 (referring to "due process claim based on access to the courts"). Thus there is ample authority to conclude that among the progeny of the Due Process Clause is the right of court access.

[15] We note that defendants are federal officials, so plaintiff's reliance on the Fourteenth Amendment is misplaced; if grounded in the Due Process Clause, his right of access arises under the Fifth Amendment. We will construe the *pro se* complaint liberally, however, *Todaro v. Bowman,* 872 F.2d 43, 44 n. 1 (3d Cir.1989), and conclude that it alleges that the repeated opening of properly marked incoming court mail outside his presence has violated his Fifth Amendment right to court access.

**2. Scope of the right**

The Supreme Court's characterization of the right to court access as requiring "adequate, effective, and meaningful" access, *Bounds,* 430 U.S. at 822, 97 S.Ct. at 1495, provides only limited guidance as to the scope of the right's protection. We have noted that "the Court did not define the term 'adequate' with specificity," *Abdul–Akbar v. Watson,* 4 F.3d 195, 202 (3d Cir.1993); unfortunately, "[o]ur own application of *Bounds* has contributed only slightly to a more precise standard of 'adequacy.'" *Id. See also Brewer,* 3 F.3d at 821 ("the precise contours of a prisoner's right of access to the courts remain somewhat obscure").

[16] Although our decisions have primarily concerned the adequacy and accessibility of prison law libraries and legal staff, *see Peterkin, supra; Valentine v. Beyer,* 850 F.2d 951 (3d Cir.1988); *Abdul–Akbar, supra,* a few principles emerge. Prison measures are to be evaluated individually and in sum. *Abdul–Akbar,* 4 F.3d at 203. A court must determine whether the means of access "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds,* 430 U.S. at 825, 97 S.Ct. at 1496. "'[T]he touchstone ... is meaningful access to the courts.'" *Peterkin,* 855 F.2d at 1037 (quoting *Bounds,* 430 U.S. at 823, 97 S.Ct. at 1495) (internal quotation omitted).

Relying principally on our decision in *Hudson v. Robinson,* 678 F.2d 462 (3d Cir.1982), the government contends that unless a pris-

oner is "actually denied" access to the courts, his right to meaningful access has not been violated. *Hudson,* 678 F.2d at 466. *See also Proudfoot,* 803 F.Supp. at 1053, n. 8; *Walker,* 4 F.3d at 413 (opening incoming legal mail outside prisoner's presence does not violate right to court access unless "his position as a litigant was prejudiced by the mail tampering"); *Brewer,* 3 F.3d at 825.

[17] This analysis ignores our later decision in *Peterkin.* There we distinguished "ancillary" aspects of court access, which "may affect merely comfort or convenience without depriving a prisoner of access," 855 F.2d at 1041, from prison practices that are "central, not peripheral, to the right of access to the courts." *Id.* The former require a showing of actual injury but the latter do not. *Id.* at 1041–42.

In *Peterkin* we characterized as "ancillary" an action seeking to require the prison to supply *gratis* pads, pens, pencils, postage, and photocopying to prisoners who had funds in their institutional accounts sufficient to purchase the items. *See Peterkin,* 855 F.2d at 1041–42 (discussing *Kershner v. Mazurkiewicz,* 670 F.2d 440 (3d Cir.1982) (*in banc* )). We also described as ancillary the issue in *Hudson* itself, where a prisoner sued because he was once required to wait ten days to have a document notarized. *Peterkin,* 855 F.2d at 1039, 1041–42 (discussing *Hudson, supra* ). By contrast, the adequacy of a prison law library concerned issues central to the right of court access. *Id.*

[18] Plaintiff does allege he was injured by the damage to his briefing schedule, but he offers no evidence to establish that the damage obscured the dates, nor to dispute defendants' contention that he received a separate notice from the clerk's office pursuant to Third Circuit LAR Misc. 107.2(a), informing him that he had fourteen days to file a brief else the appeal would be dismissed. We conclude that plaintiff has not demonstrated that he has suffered an actual injury regarding court access.

[19] Nonetheless, and although the question is close, we conclude that repeated violations of the confidentiality of a prisoner's incoming court mail are more central than ancillary to the right of court access, and thus no showing of actual injury is necessary for plaintiff to establish that the right has been infringed. We are satisfied that a practice of opening court mail outside an inmate's presence implicates a core aspect of the right. Such conduct inhibits an inmate's ability to protect his legal rights in court and frustrates the principles of *Bounds.* Unlike free pens or slight delays in notarizing documents, interference with such mail threatens the primary, often sole means by which a prisoner can exercise his constitutional rights. Without assurances that legal correspondence, including both attorney and court mail, is confidential and secure, court access can hardly be effective, adequate, and meaningful.

In so holding, we distinguish between a single, inadvertent instance of an inmate's court mail being opened outside his presence, and a pattern and practice of such conduct. Notwithstanding our characterization that protection of court mail is central to an inmate's right of court access, and thus no actual injury need be shown in the face of a pattern and practice of opening such mail outside of the inmate's presence, we do not necessarily rule out the need to show such injury where the opening is isolated and inadvertent. *See Castillo,* 990 F.2d at 306–07 (allegations that three pieces of incoming court mail were opened outside inmate's presence states colorable constitutional claim); *Washington,* 782 F.2d at 1139 (distinguishing allegation that two pieces of legal mail were opened outside inmate's presence, which would indicate "continuing activity" and therefore constitutional violation, from "single isolated instance," which would not). *Cf. Morgan v. Montanye,* 516 F.2d 1367, 1370–72 (2d Cir.1975) (single instance of legal mail opened outside presence of inmate does not violate Constitution), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976); *Boyd v. Petsock,* 795 F.Supp. 743 (W.D.Pa.1992) (same).

We need not specify a minimum number of instances in which properly marked legal mail is opened outside a prisoner's presence sufficient to eliminate the requirement of showing actual injury. Determining whether

a prisoner has demonstrated a custom or practice is a fact-bound inquiry.

[20–23] Lastly, we note several distinctions that may clarify our discussion of the right of court access as applied to prison legal mail. First, reading legal mail would appear to infringe the right of access even more than simply opening and inspecting it. Second, as the Supreme Court noted, the only way to ensure that mail is not read when opened, and thus to vindicate the right to access, is to require that it be done in the presence of the inmate to whom it is addressed. *Wolff,* 418 U.S. at 576–77, 94 S.Ct. at 2984–85. Third, interference with attorney mail probably infringes the right of court access even more than interference with court mail, whether the correspondence relates to a criminal conviction, a subsequent collateral proceeding, or a civil suit to protect an inmate's constitutional rights. Of all communications, attorney mail is the most sacrosanct. Thus, although the Sixth Amendment is not recognized as the repository for such a shield in civil matters, *see Finley, supra,* the right of court access guarantees the privacy of attorney-client communications. *See* John W. Palmer, *Constitutional Rights of Prisoners,* 4th ed., at 40 (Anderson Publishing Co. 1991) ("A basic corollary to the right of access to the courts is the inmate's right to communicate with an attorney concerning the validity of his conviction or the constitutionality of conditions within the detention facility").

[24] We conclude that a pattern and practice of opening plaintiff's properly marked incoming court mail outside his presence impinges upon his constitutional rights to free speech and court access.[5] This determination does not depend on the mere violation by prison officials of § 540.18 and Policy Statement § 13(a), which by itself does not establish a constitutional violation. *Daniels v. Williams,* 474 U.S. 327, 332–33, 106 S.Ct. 662, 665–66, 88 L.Ed.2d 662 (1986); *Davis v. Scherer,* 468 U.S. 183, 193–94, 104 S.Ct. 3012, 3018–19, 82 L.Ed.2d 139 (1984).

IV.

We turn next to the question whether a pattern and practice of opening plaintiff's properly marked incoming court mail outside his presence, which infringes his rights to free speech and court access, rises to the level of a constitutional violation.

[25] In several decisions the Supreme Court has struggled to define the standard for review of prison regulations which impinge upon the constitutional rights of inmates. Though the Court announced a fairly searching standard in *Procunier,*[6] its later decisions in *Turner* and *Abbott* held that as to prison mail, the *Procunier* standard is "limited to regulations concerning *outgoing* correspondence." *Abbott,* 490 U.S. at 413, 109 S.Ct. at 1881 (emphasis added).

In *Turner,* the Court applied a less rigorous standard for review of incoming mail, a standard which it applied in *Abbott* as well.

5. We add a note about the right to privacy, because plaintiff relies on the Fourteenth Amendment and the district court cited the decision in which Judge Reinhardt, in dissent, stated "reading legal mail is a violation of the prisoner's privacy rights." *Stevenson,* 877 F.2d at 1443. The Supreme Court has recognized that the right to privacy survives incarceration. *Turner,* 482 U.S. at 95–99, 107 S.Ct. at 2265–67. *See also Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 334 (3d Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). Although authorized by § 540.18, routine reading of purely personal letters from friends and family, those daily expressions of affection and love, may implicate an inmate's right to privacy. Certainly personal information in the hands of prison officials may result in ridicule, harassment, and retaliation. If prisoners are stripped of the right to communicate privately their love, their hopes, and even their grievances, then recidivism rather than rehabilitation is fostered. Similarly, opening legal mail outside the presence of an inmate, giving rise to the reasonable inference that such mail is read, may also implicate the right to privacy. We do not reach this issue, however, as plaintiff has not placed it before us.

6. In *Procunier,* the Court held that a prisoner's mail is protected "against unjustified governmental interference." 416 U.S. at 408–09, 94 S.Ct. at 1809. To justify interference, the government must show an "important or substantial governmental interest unrelated to the suppression of expression," *id.* at 413, 94 S.Ct. at 1811, and that the suppression was "no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.*

The Court in *Turner* held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261. *See also Shabazz,* 482 U.S. at 349–50, 107 S.Ct. at 2404–05 (applying *Turner* reasonableness standard to regulations that restrict free exercise of inmate's religion). The Court then identified several factors useful in evaluating reasonableness. *Id.* at 89–91, 107 S.Ct. at 2261–63. *See also Abbott,* 490 U.S. at 414–18, 109 S.Ct. at 1882–84; *Sturm v. Clark,* 835 F.2d 1009, 1013–14 (3d Cir.1987). The *Abbott* Court acknowledged that the *Turner* standard is more deferential to prison officials than that of *Procunier,* but embraced the new test with the caveat that "a reasonableness standard is not toothless." *Abbott,* 490 U.S. at 414, 109 S.Ct. at 1882. *See also Turner,* 482 U.S. at 97, 107 S.Ct. at 2265–66 (ban on inmate marriage not reasonably related to legitimate penological interests).

[26] Though the case before us concerns an alleged pattern and practice of official conduct, rather than a prison regulation, application of the *Turner* standard is appropriate. *See Brewer,* 3 F.3d at 825–26 (applying *Turner* standard to prison practice, not regulation). We also note that the government does not argue that the conduct alleged by plaintiff comports with *Turner.*

The first *Turner* factor asks whether there is a rational connection between the infringing prison practice and a valid government interest. To justify interference with prisoner mail, officials typically invoke their interests in rehabilitation of inmates and institutional security. *See, e.g., Abbott,* 490 U.S. at 415, 109 S.Ct. at 1882–83; *Shabazz,* 482 U.S. at 348, 107 S.Ct. at 2404. First, in the absence of a determination by, for example, a prison psychiatrist that receipt of particular correspondence would disturb an inmate, we hesitate to conclude that the government interest in rehabilitation is served by opening incoming court mail outside an inmate's presence. *See Ramos,* 639 F.2d at 581–81. Second, the interest in institutional security is generally linked to mail on the supposition that correspondence may contain plans for escape or incite violence. We recognize the validity of this substantial interest, but to argue that it is served on the facts of this case—to suggest that repeatedly opening incoming court mail outside the presence of an inmate advances a legitimate interest in institutional security—would overreach.

In addition, we note that prison officials themselves have long recognized that providing a confidential, reliable means for prisoners to communicate their grievances to impartial courts and government officials, and to obtain a fair resolution of those grievances, releases tension in the prisons and itself advances the state interest in maintaining institutional order and security. *See generally* Ira P. Robbins, *The Prisoners' Mail Box and the Evolution of Federal Inmate Rights,* 144 F.R.D. 127 (1993) ("Prisoners' Mail Box"). In 1929, for example, Superintendent of Prisons (and later first Director of the U.S. Bureau of Prisons) Sanford Bates wrote to the warden of the federal jail at Fort Leavenworth:

> It seems to me important that the inmates in your institution should have some reasonable and dignified method of making known any real or fancied grievance that they might have. An institution is a good deal like a steam boiler, and needs a safety valve occasionally.

Prisoners' Mail Box, 144 F.R.D. at 143. An understanding of the benefits of such a "safety-valve" persuaded prison officials that preserving the confidentiality of communications with courts, agencies, and legislators advanced, rather than frustrated, important penological interests. *Id.* at 148–49, 153–54.[7]

Consideration of the second *Turner* factor, the availability of alternate means of exercising the rights at issue, also indicates that defendants' practice is not reasonably related

7. Interestingly, though prison officials initially censored inmate correspondence to federal judges to ensure that the content was decent, respectful, and non-libelous, when federal judges and even the Clerk of the U.S. Supreme Court expressed a preference for receiving prisoner mail unopened and unexpurgated, the Bureau of Prisons changed its procedures. Prisoners' Mail Box, 144 F.R.D. at 155, 159–60.

to a legitimate interest. Although other means of expression remain available to prisoners even when prison officials interfere with their general mail, *Abbott,* 490 U.S. at 417–18, 109 S.Ct. at 1883–84, we are not aware of means other than by way of uninhibited use of the mail for *pro se* prisoners to exercise their rights of court access.

Finally, the third *Turner* factor concerns the burdens of accommodating the exercise of prisoners' constitutional rights. To accommodate plaintiff's rights to free speech and court access by opening his incoming court mail only in his presence places no burden at all on guards, prisoners, and the allocation of prison resources: it is what the regulations have required since 1985. *See* 28 C.F.R. § 540.18 (1994).

[27] We hold that the pattern and practice of opening plaintiff's properly marked incoming court mail outside his presence fails the *Turner* reasonableness standard and violates the Constitution. We acknowledge that our conclusion differs from that of the Fifth Circuit, *see Brewer,* 3 F.3d at 825, but note that it comports with the results reached by the majority of courts of appeals to consider these precise or similar issues, not to mention the results reached by our own district courts. *See Lavado,* 992 F.2d at 609–10; *Castillo,* 990 F.2d at 307; *Lemon,* 931 F.2d at 1468; *Washington,* 782 F.2d at 1139; *Jensen,* 648 F.2d at 1182–83; *Ramos,* 639 F.2d at 582; *Jordan,* 881 F.Supp. at 952–54; *Proudfoot,* 803 F.Supp. at 1052; *Carty,* 440 F.Supp. at 1162–63.

[28] As noted above, we are careful to distinguish between a single, inadvertent opening of properly marked legal mail outside an inmate's presence and a pattern or practice of such actions. The former may not infringe a prisoner's right to free speech, nor his right to court access absent a showing of actual injury. The latter, however, both infringes those rights and fails *Turner.*

V.

[29, 30] Even where a plaintiff can establish a constitutional violation, under the doctrine of qualified immunity government officials will not be liable if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In contrast, if "the law is not established clearly when an official acts, he is entitled to qualified immunity because he 'could not reasonably be expected to anticipate subsequent legal developments.'" *In re City of Philadelphia,* 49 F.3d at 961–62 (quoting *Harlow,* 457 U.S. at 817–19, 102 S.Ct. at 2737–39). Though here again the question is close, we conclude that defendants are not entitled to qualified immunity.

There can be no dispute that the contours of plaintiff's rights under § 540.18 and § 13(a) of the Policy Statement were sufficiently clear that a reasonable prison official would understand that repeatedly opening plaintiff's incoming court mail outside his presence violates those regulations. Although promulgation of a regulation will not constitutionalize its violation, § 540.18 and the Policy Statement surely undermine any claim by defendants that they were unaware of their legal obligations in handling plaintiff's mail. Thus the government's argument is reduced to the contention that while the illegality of their behavior was manifest, the constitutional magnitude of their actions was murky.

We disagree. First, in *Procunier* and *Wolff* the Supreme Court made clear that the treatment of a prisoner's legal mail implicates constitutional rights to free speech and court access. The subsequent decisions in *Turner* and *Abbott* did not question that interference with prison mail infringed these constitutional rights; the latter decisions merely established that such infringement was constitutionally permissible if it was reasonably related to a legitimate penological purpose. Here, defendants do not even argue that their conduct meets this standard.

Second, though numerous other courts of appeals have considered conduct akin to that alleged by plaintiff, no gaping divide has emerged in the jurisprudence such that defendants could reasonably expect this circuit to rule other than we do. *See Lavado,* 992 F.2d at 609–10; *Castillo,* 990 F.2d at 307; *Lemon,* 931 F.2d at 1465; *Washington,* 782 F.2d at 1139; *Ramos,* 639 F.2d at 582; *Jensen,* 648 F.2d at 1182–83. Only the Fifth Circuit has reached a contrary decision. *Brewer,* 3 F.3d at 825; *Walker,* 4 F.3d at 413.

The Seventh Circuit's decision in *Castillo* is particularly instructive. There, a prisoner alleged that three letters from a federal courthouse were opened outside his presence. Because three instances "may be indicative of ongoing activity," 990 F.2d at 306, the Seventh Circuit determined that the inmate had "presented a colorable claim" of a constitutional violation and reversed the district court's dismissal of the action. *Id.* at 307.

The Sixth Circuit's decision in *Lavado* is also relevant. There, the court denied summary judgment to defendant prison officials on the basis of qualified immunity where one letter from the Court of Appeals for the Eleventh Circuit was allegedly opened outside an inmate's presence and a second letter, from a state law department, was allegedly opened and read in his presence. *Lavado,* 992 F.2d at 609–10. The Sixth Circuit held that "it was clearly established at the time of the openings/reading in the instant case that prisoners' mail could not be opened or read in [an] arbitrary or capricious fashion." *Id.* at 610.

Third, the district courts in our circuit who have addressed the issue have consistently determined that repeatedly opening a prisoner's legal mail outside his presence violates the Constitution. *See Jordan,* 881 F.Supp. at 953–54; *Proudfoot,* 803 F.Supp. at 1052; *Carty,* 440 F.Supp. at 1162–63. *See also Young v. Keohane,* 809 F.Supp. 1185, 1197–98 (M.D.Pa.1992) (denying qualified immunity to prison officials who allegedly intercepted mail addressed to judges and court personnel).

[31] Finally, the absence of a previous decision from our court on the constitutionality of the conduct at issue is not dispositive. We have explained that the "clearly established" standard "require[s] 'some but not precise factual correspondence between relevant precedents and the conduct at issue.'" *In re City of Philadelphia,* 49 F.3d at 970 (citation omitted). We think the facts of *Castillo, Lavado, Proudfoot,* and *Carty* enjoy a substantial "factual correspondence" to the circumstances here.

[32] Thus, we conclude that though our court has not previously ruled on this precise issue, the contours of defendants' legal obligations under the regulations and Constitution were sufficiently clear that a reasonable prison official would understand that repeatedly opening plaintiff's properly marked incoming court mail outside his presence violates the Constitution. Accordingly, we will reverse the district court order granting defendants qualified immunity from plaintiff's claims.

VI.

For the foregoing reasons, we will affirm in part, *see* note 1, *supra,* and reverse in part the order of the district court granting summary judgment to all defendants on all claims.

SCIRICA, Circuit Judge, concurring.

I agree that Bieregu has alleged a constitutional violation of his right to court access, and that the law was sufficiently established to preclude a finding of qualified immunity. But I have doubts that Bieregu's free speech rights are implicated here.

First Amendment free speech rights are implicated when prison officials censor inmates' mail. *Procunier v. Martinez,* 416 U.S. 396, 409, 94 S.Ct. 1800, 1809, 40 L.Ed.2d 224 (1974), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). But "freedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935 (1974). Because it is far from clear that defendants censored Bieregu's court mail, I would base this holding on his constitutional right to court access.

Also, because Bieregu has not claimed his right to privacy was infringed, it is unnecessary to address this issue.

Present: MANSMANN, SCIRICA and SAROKIN, Circuit Judges.

SUR PETITION FOR REHEARING

Sept. 11, 1995

The petition for rehearing filed by appellant in the above-entitled case having been submitted to the judges who participated in the decision of this court, and no judge who concurred in the decision having asked for rehearing, the petition for panel rehearing is denied.

**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Grady William POWERS, Defendant–Appellant.**

**No. 93–5944.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1994.

Decided July 14, 1995.

Defendant was convicted of aggravated sexual abuse of a minor by the United States District Court for the Western District of North Carolina, William L. Osteen, Sr., J. Defendant appealed. The Court of Appeals, Williams, Circuit Judge, held that: (1) prior bad acts evidence was admissible; (2) evidence regarding victim's sexual relations with her boyfriend was inadmissible; (3) penile plethysmograph test failed to meet scientific validity requirement for admissibility; and (4) expert testimony that defendant was not fixated pedophile was not relevant.

Affirmed.

Lay, Senior Circuit Judge, sitting by designation, filed dissenting opinion.

**1. Criminal Law ⟹369.2(5)**

Evidence of defendant's violence against victim and her family members was admissible, in defendant's prosecution for aggravated sexual abuse of minor, to explain victim's submission to acts and delay in reporting sexual abuse; evidence was relevant to issue of defendant's guilt and violence was sufficiently related to the nature of the offense charged, evidence of violence was necessary to place sexual abuse evidence in context, evidence was reliable, and probative value substantially outweighed danger of unfair prejudice. 18 U.S.C.A. § 2241(c); Fed.Rules Evid.Rules 403, 404(b), 28 U.S.C.A.

**2. Criminal Law ⟹369.1**

Prosecution may not introduce evidence of extrinsic offenses to demonstrate defendant's propensity to commit unlawful acts or to prove that defendant committed crime with which he is presently charged. Fed. Rules Evid.Rule 404(b), 28 U.S.C.A.

**3. Criminal Law ⟹369.2(1)**

Evidence of extrinsic offenses may be admissible for purposes other than demonstrating defendant's propensity to commit unlawful acts or proving that defendant committed crime with which he is presently charged, such as for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**4. Criminal Law ⟹369.2(1)**

List of purposes for which evidence of prior bad acts may be admitted is illustrative rather than exclusionary. Fed.Rules Evid. Rule 404(b), 28 U.S.C.A.

**5. Criminal Law ⟹369.2(1)**

Evidence of prior bad acts is admissible if it is: relevant to issue other than character; necessary to show essential part of crime or context of crime; and reliable. Fed.Rules Evid.Rule 404(b), 28 U.S.C.A.

**6. Criminal Law ⟹369.2(1)**

If evidence of prior bad acts is relevant to issue other than character, necessary to show essential part of crime or context of crime, and reliable, evidence is admissible unless its probative value is substantially out-

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CLEARY,
PLAINTIFF : CIVIL ACTION NO: 1-CV-00-2125
v. : (Judge Caldwell)

KENNETH KYLER, ET. AL.,
DEFENDANTS :

CERTIFICATE OF SERVICE

I hereby certify that I am this day depositing in the U.S. mail a true and correct copy of the foregoing Plaintiff's Objection to Summery Judgement, upon the person(s) and manner indicated below.

service by ~~first class~~ BOOK RATE Mail
addressed as follows:

Office of Chief Counsel
Mr. Raymond W. Dorian
55 Utley Drive
Camphill, Pa 17011

John Cleary #DF5779
Box 99901
Pittsburgh, Pa 15233

DATED: 4/22/02

X [signature]
John Cleary #DF5779
Pro Se Prisoner