

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN CLEARY,                          :
                                      :
        Plaintiff                     :
                                      :
        vs.                           :       CIVIL NO. 1:CV-00-2125
                                      :
                                      :       (Judge Caldwell)
KENNETH KYLER, et al.,                :
                                      :                    **FILED**
        Defendants                    :              HARRISBURG, PA

                                                        NOV 2 7 2002

        M E M O R A N D U M              MARY E. D'ANDREA, CLERK
                                         Per_____
                                                  Deputy Clerk

I.    Introduction

        John Cleary, an inmate at SCI-Pittsburgh, filed this pro

se civil rights complaint pursuant to 42 U.S.C. § 1983 concerning

his delay in receipt of religious and legal mail while incarcerated

at the State Correctional Institution at Camp Hill("SCI-Camp

Hill"), Camp Hill, Pennsylvania.  Named as defendants are the

following individuals who were employed at SCI-Camp Hill at the

times relevant to this action:  Kenneth Kyler, Superintendent[1];

William Ward, Unit Manager of the Special Management Unit ("SMU");

and Howard Imschweiler, Mail Room Supervisor.[2]

        Previously, by order dated August 31, 2001, this court

granted defendants' motion to dismiss all claims except plaintiff's

claims for violations of his Sixth Amendment right of access to the

_____

        [1]  Kenneth Kyler is currently the Superintendent at SCI-
Huntingdon, Huntingdon, Pennsylvania.

        [2]  Mr. Imschweiler is no longer employed by the Pennsylvania
Department of Corrections.

courts, and for his First Amendment right to the free exercise of religion.  Presently pending is defendants' motion for summary judgment.  For the reasons that follow, the motion will be granted.

II.    Background

Cleary alleges defendants wrongfully withheld legal and other mail from him while housed in SCI-Camp Hill's Special Management Unit ("SMU").  Specifically, Cleary received one item of legal mail and several pieces of religious mail more than one year after their postmark.  He claims the delay in his receipt of these materials violated his right of access to the courts and his right to the free exercise of religion.

Cleary was housed at SCI-Camp Hill's SMU between October 10, 1997, and July 7, 1999.  (Doc. 1)  He was then transferred to SCI-Graterford's Mental Health Unit ("MHU") for a psychological evaluation.  He returned to SCI-Camp Hill's MHU on August 27, 1999, only to be transferred the next day to SCI-Frackville's MHU.  A month later Cleary was transferred to the Forensic Treatment Center at Waymart ("FTC-Waymart").  He remained at the forensic treatment center until December 27, 1999.  (*Id.* at ¶¶ 5-11)

With respect to his legal mail, Cleary contends that on November 12, 1999, he received an envelope containing notes of his

deposition and a trial scheduling order for civil action No. 96-4805[3], from his court-appointed counsel, Christopher Culleton, that was postmarked December 5, 1997.  (*Id.* at ¶¶ 12-16) Cleary claims the late receipt of these items "caused the plaintiff to be unprepared for his trial and his case was lost as a direct cause of defendant Imschweiler withholding the plaintiff's legal mail for 23 months."  (*Id.* at ¶ 18).

Plaintiff also asserts that he did not receive various religious materials in a timely manner.  Religious pamphlets from the House of Yahweh were postmarked June 4, 1998, but Plaintiff did not receive the items until November 16, 1999.  Religious pamphlets from Yahweh's New Covenant Assembly were postmarked November 30, 1998, but he also did not receive these works until November 16, 1999. (*Id.* at ¶¶ 32-43)  Cleary alleges the defendants' actions of withholding his religious mail "caused [him] to be unable to study, and increase his knowledge and faith in his religious beliefs and practices."  (*Id.* at ¶ 39).

On March 14, 2002, the defendants filed a motion for summary judgment. To pierce Cleary's allegations, defendants have submitted a statement of material facts (Doc. 54), supported by documentation and the declarations of defendants Kyler and Ward.

---

[3]  The Court will take judicial notice of *Cleary v. Vaughn*, Civ. Action No. 96-CV-4805 (E.D. Pa. 1998)(J. Ludwig).  This is an excessive-use-of-force action filed by Cleary relative to an incident that took place during his incarceration at SCI-Graterford.  The facts of that case have no bearing on the present case before the Court.

(Doc. 39, Exhibits 1-6.) They have also submitted portions of Cleary's deposition testimony. (*Id.*, Ex. 7.)  These submissions propose the following as material and undisputed facts.

On July 5, 1996, Cleary initiated an excessive use of force action in the Eastern District of Pennsylvania against several employees at SCI-Graterford for an incident that took place in 1995.  That case was docketed as *Cleary v. Vaughn*. (Doc. 39, Ex. 2.)  The jury trial in *Cleary v. Vaughn*, lasted approximately one week in April 1998 and terminated in a defense verdict.  (*Id.*; Doc. 39, Ex. 7, pp. 15-16.)  The delayed legal mail at issue consists of a letter from Attorney Culleton to Cleary, postmarked December 5, 1997, and was not received by Plaintiff until 1999.  The legal letter in question contained a copy of Plaintiff's deposition and a scheduling order in the same case.  (Doc. 39, Ex. 3; Ex. 7, pp. 22-23).  Cleary believes his court-appointed counsel "did the best he could under the circumstances" and that he did "everything he could do in his power" in representing him in that matter.  (Doc. 39, Ex. 7, pp. 15-16). Cleary had the opportunity to meet with his legal counsel face-to-face, on more than one occasion at SCI-Graterford in advance of trial.  (*Id.* at pp.17-18, 33).  Cleary admits that "[he] could have been more prepared...and still could have lost." (*Id.*, pp. 31-32).  He also stated that the outcome of the case was "up to the jury," and that he testified to the best of his ability. (*Id.*, pp. 31-32.)

-4-

With respect to the claims of interference with his the free exercise of religion, defendants proffer the following evidence. Cleary testified that he is of the Nazarite religious faith, which is a type of Hebrew Rastafori faith. (*Id.,* p. 34.) Followers of the Nazarite faith pray separately and not as part of a congregation. They also read the Torah and fast. (*Id.,* p. 38-39.) The two envelopes containing Nazarite religious material that were postmarked in June and November 1998, respectively, were not received by Cleary until 1999. (Doc. 39, Ex. 3; Ex. 7, p. 42.) The first envelope was from the House of Yahweh in Abeline, Texas and contained several religious "tracts" or lessons. (Doc. 39, Ex. 7, pp. 41-42.) The second envelope was from New Covenant Assembly in Kingdom City, Missouri, and also contained several small religious tracts. (*Id.* at pp. 50-53.)

Cleary had approximately 20 to 25 of these religious tracts in his cell and more in storage during the two-year period in question. (*Id.,* at pp. 43-44). During this time he was still able to read the Torah, read other tracts in his possession and pray without the misplaced religious pamphlets. (*Id.* at p. 50, 52, 59). Cleary continues to pray and observe the Sabbath. (*Id.* at p. 55-56).

With respect to the personal involvement of the various defendants in the delayed delivery of Cleary's legal and religious mail, defendants again offer the Plaintiff's deposition testimony and the declarations of Kyler and Ward to refute their personal

-5-

involvement in the allegations. (Doc. 39, Exs. 5-7).  Cleary

testified that he never had any face-to-face meetings with

Superintendent Kyler and only knew him through grievance appeals.

(Doc. 39, Ex. 7, pp. 7-8.)  Superintendent Kyler confirmed he had

no contact with Cleary concerning his lost mail, and that he was

not responsible for the delay in delivery of legal and religious

mail.  (Doc. 39, Ex. 5, ¶ 6).  Defendant Ward was not responsible

for the delivery of mail in the SMU and did not delay the

Plaintiff's mail.  (Doc. 39, Ex. 6, ¶ 3).  Cleary testified that he

could not say whether or not Superintendent Kyler or Unit Manager

Ward had any role in the delay of his mail.  (Doc. 39, Ex. 7, p.

57-58). Defendants add that an investigation by SCI-Camp Hill's

Security Office uncovered numerous boxes of undelivered mail in the

mailroom, including Cleary's, and that defendant Imschweiler was

subsequently terminated as a result.  (Doc. 39, Ex. 5, ¶ 6).

        Defendants contend that Cleary has not demonstrated the

personal involvement of Kyler or Ward, and thus, they are entitled

to summary judgment as a matter of law.  As for defendant

Imschweiler, defendants contend Cleary cannot demonstrate any harm

as a result of the delay of his legal or religious mail, and

therefore, cannot as a matter of law, maintain an access-to-courts

or First Amendment claim.  Finally, defendants assert that

Imschweiler's negligence, alone, cannot serve as the basis of a

constitutional violation.

In his opposition materials, Cleary summarily admits or denies each of defendants' statement of material facts. He does not cite to evidence of record to contradict facts he disputes.[4] (Doc. 49). He claims defendants have admitted that his legal and religious mail were unexplainably withheld from him for an extended period of time, and thus, he is entitled to judgement in his favor. Cleary produces statements from defendant Imschweiler acknowledging his responsibility for the withholding of several boxes of inmate mail, including his mail, over a two year period of time, as the basis for the Court to deny defendants' motion for summary judgment. He concludes Superintendent Kyler and Ward, as a result of their supervisory roles within the institution, are responsible for violating his right to access the courts and religious exercise just because his mail was, in fact, substantially delayed in being delivered as a result of defendant Imschweiler's actions.

With respect to challenging defendants' claim of his lack of injury in any case, Cleary states that he can prove "substantial injury" as a result of the delayed receipt of both his legal and religious mail. He claims that without his deposition transcript in *Cleary v. Vaughn, supra,* he was not prepared for trial. He claims that "even if plaintiff did talk and meet with his legal counsel, the case was lost," thus providing the requisite injury or

---

[4] Because Cleary has not properly responded to the defendants' LR 56.1 statement of facts, all of the facts in that statement are deemed admitted for purposes of the defendants' motion for summary judgment. *See* M.D. Local Rule 56.1.

harm.   (Doc. 40, p. 4) He also implies that meeting his counsel at the courthouse the day of the trial is inadequate and does not prove counsel's effectiveness in preparing him for trial.  *Id.*

With respect to the interference with the practice of his religion due to the nearly two-year delay in his receipt of religious tracts and study materials, Cleary claims that "information previously unknown to the plaintiff, but vital to the plaintiff's correct worship, was contained in [those] packages." (Doc. 40, p. 6).  He believes that "because he called on his Creator by incorrect, erroneous, and blasphemous names, that his prayers went largely unanswered by his Creator...information contained in [the withheld packages] would have otherwise informed the plaintiff of his error."  (*Id.*)  He concedes that during the time he was without these materials he could pray, "but not correctly or accurately, nor could he grow in his faith."  (Doc. 40, p. 7).  He also admits that although he could fast during the time frame the religious tracts where withheld from him, he did so incorrectly and "without the knowledge of the rules, which would maximize his atonement to his creator."  (*Id.*)

III.   Standard of Review

The court will consider defendant's motion under the well established standard applicable to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Young v. Quinlan*, 960 F.2d 351, 357 (3d Cir. 1992). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. After such a showing has been made, the nonmoving party cannot rely upon conclusory allegations in his pleadings or in memoranda and briefs to establish a genuine issue of material fact. Rather, the nonmoving party must go beyond the pleadings and offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990); Fed. R. Civ. P. 56(e). Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's

-9-

affidavit.  *Liberty Lobby*, 477 U.S. at 256-57.  If the evidence in favor of the nonmoving party is merely colorable or not significantly probative, summary judgment should be granted.  *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

To determine whether the nonmoving party has met his or her burden, the court must focus on both the materiality and the genuineness of the factual issues raised by the non-movant. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Liberty Lobby, Inc.*, 477 U.S. at 247-48.

A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.  Id. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250.  If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'." *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (quoting, *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  All inferences, however, "'should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's,

-10-

then the non-movant's must be taken as true'." *Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 512 (3d Cir. 1994),(quoting *Big Apple BMW, Inc. v. BMW of N. America*, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992)).

IV. <u>Discussion</u>.

    1. <u>Cleary's Access to Courts Claim</u>.

        An inmate's constitutional right of access to the courts is well-established. *Lewis v. Casey*, 518 U.S. 343, 346, 116 S.ct 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 1494, 52 L.Ed.2d 72, 78 (1977). Since *Lewis*, an inmate must prove an actual injury, such as the loss or rejection of a non-frivolous legal claim to succeed on an access-to-courts claim. *Id*. at 350-352, 116 S. Ct. at 2179, 2180-81, 135 L.Ed.2d at 617-18. An inmate's conclusory assertion that he suffered prejudice does not suffice to support an access-to-courts claim. Nor may a court presume harm from the interference with an inmate's right of access to the courts; some showing of impaired access is required. *Oliver v. Fauver*, 118 F.3d 175, 177-78 (3d Cir. 1997).

        Turning to the merits of the complaint, Plaintiff contends that the Defendants impermissibly interfered with his access to the courts when they withheld one piece of legal mail consisting of his deposition transcript and a scheduling order in an unrelated action for excessive force. Plaintiff maintains that

-11-

because he did not have these materials, he was unprepared for trial and lost his case.  Defendants contend that Plaintiff cannot show the "actual injury" requirement necessary to succeed in such a claim because he cannot demonstrate that the delay in the delivery of his deposition transcript was responsible for his losing his case.  We agree.

Plaintiff has failed to establish that he was actually injured by the deprivation of a copy of his deposition transcript in his civil action before the Eastern District of Pennsylvania. While it is undisputed that his deposition transcript, legal mail, did not reach him prior to his trial in *Cleary v. Vaughn, supra*, he has not demonstrated that he lost his trial in that matter because of that deprivation. In fact, in his deposition, Cleary admits this very fact.

> Q: All right.  Is there anything you think that would have been different about your case and your trial if you had received that package earlier?
>
> A: I can't say, you know.  That was up to the jury.  I mean, it could have, it could not have, you know. It could have went either way, you know.  I *believe* I might have had a better chance.  I'm not saying that I would definitely have been victorious if I had that.  That's not what I'm trying to say.

(Doc. 39, Exhibit 6, p. 31, lines 11 - 19) (emphasis added). Cleary's belief that he "could have been more prepared than anything and still lost" is insufficient to demonstrate the

-12-

defendants' alleged intentional withholding of his legal mail
hampered his pursuit of a nonfrivolous civil rights action. (Id.
at p. 32, lines 2-3). It is noteworthy that Cleary's trial in the
Eastern District took place in early 1998 and that Cleary admits
that the first time he learned of the delayed receipt of the his
deposition transcript in that matter was in November 1999. (Id. at
18 and 21). There is no indication that Cleary even complained at
the time of trial that he, or his court-appointed counsel, was
unable to proceed with the action because of Cleary's inability to
review his deposition transcript. This fact is underscored by
Cleary's statement that his court-appointed attorney, albeit
briefly, reviewed his deposition testimony with him. (Id. at 33,
lines 11-16). Although Cleary claims that defendants' actions
impaired his access to courts, he presents nothing more than
conclusory statements to support his assertion. The evidence
presented by defendants, mostly in the form of Cleary's own
deposition, supports the award of judgment in their favor on this
issue. Cleary's access-to-courts claim, as it relates to the
defendants' prolonged delay in the delivery of his legal mail must
therefore be dismissed.

    2.   Cleary's Free Exercise of Religion Claim.

       The Free Exercise Clause of the First Amendment provides
that "Congress shall make no law respecting an establishment of
religion, or prohibiting the free exercise thereof . . . ." U.S.

-13-

CONST. Amend. I.   In *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 2254, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.   This Clause embraces two concepts, the freedom to believe and the freedom to act.   While the first is absolute, the second is not.   *Cantwell*, 310 U.S. at 303-04, 60 S.Ct. at 903, 84 L.Ed. at 1213.

> [T]he 'exercise of religion' often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation.

*Employment Division v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 108 L.Ed.2d 876 (1990).

It is well settled that prisoners retain the right to a reasonable opportunity to exercise their religious beliefs while incarcerated.   *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). However, an inmate charging that prison official's actions, by policy, practice or otherwise, violate his or her free exercise of religion, must first establish that the belief in question is religious in nature, is sincerely held, and that the government action actually infringes upon the free exercise of the individual's belief. *Sherbert v. Verner*, 374 U.S. 398, 403-04, 83 S.Ct. 1790, 1793-94, 10 L.Ed.2d 965 (1963). "The mere assertion of a religious belief does not automatically

-14-

trigger First Amendment protections. . . . To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Dehart v. Horn*, 227 F.3d 47, 51-52 (3d Cir. 2000).  In order to establish a free exercise violation, the inmate must show the defendants burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith without any justification reasonably related to legitimate penological interests. See *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261-62, 96 L.Ed.2d 64 (1987).

Plaintiff has alleged the Defendants violated his right to freely exercise his religion by the inordinate delay in the delivery of instructional religious pamphlets.  Defendants do not dispute that Cleary's religious pamphlets were received at SCI-Camp Hill but not delivered to Cleary until over a year later.  However, they contend the deprivation of his religious mail was unintentional and not pursuant to any institutional policy, that defendants Kyler and Ward were not personally involved in the withholding of Cleary's religious mail, and that Cleary has failed to establish any harm as a result of the delay as he continued to practice his religion without the materials in question.  Again, based on the record before the Court, including portions of Cleary's deposition, we agree.

Most notably, we find that Cleary has not demonstrated a substantial burden was placed on his ability to practice his religious faith as a result of the 12- to 16-month delay in his

-15-

receipt of the "mini-studies".[5]  (Doc. 39, Exhibit 7, pp. 51-52).
As Cleary described his religion he noted "[i]t's more of an
individual between self and God.  We're not like a congregate type.
That's why there is no congregation and there's no call for a
congregation from the Nazarite or the Rastafori."  The religious
relationship is "between you and God," prayer is individual as
Cleary explained.  (Doc. 39, Exhibit 7, pp. 37-38).  He also noted
reading the Torah and fasting as part of his religion. *Id*. p. 38-
39.  Cleary testified he was able to pray and fast during the time
the religious materials in question were delayed.  He also
testified he had 30 to 40 other religious educational pamphlets in
his possession during the time period and that he had access to
them for study purposes.  Most significant is the following excerpt
from his deposition:

> Q:  Were you – without the religious tracts
> that you got in November of '99, were you still
> able to practice your religious faith?
>
> A: Yeah, I could practice it.

(Doc. 39, Exhibit 7, P. 59, Lines 14-17).  Thus, there is little
dispute that Cleary, by his own admission, was able to practice his
religion during the year his religious educational materials were
delayed.  The fact that Cleary in opposing defendants' motion

---

[5]  Q:  All right.  Did you need those tracts in order to
pray?
       A: Not to pray but, you know, to increase, you know, to
learn more.
(Doc. 39, Exhibit 7, pp. 51-52).

claims that as a result of the withholding of these mini-studies he unknowingly was calling his Creator by the wrong name and as a result "his prayers went largely unanswered by his Creator" (Doc. 40, p. 6), does not alter the fact that Cleary, at the time in question, believed that he could practice his religion per the mandates of his faith.

Unquestionably it is very disturbing that Cleary's mail was withheld from him for an extended period of time; however, the mishandling of his religious (and legal) mail, does not in and of itself, establish a constitutional violation. Nor does the fact that defendants have admitted that Cleary's mail was delayed as a result of the negligent acts of defendant Imschweiler, who was ultimately terminated from his position as a result, support a finding of a constitutional violation. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986), as negligence does not establish a constitutional violation. *See also Sutton v. Stewart*, 22 F. Supp.2d 1097, 1110 (D. Ariz. 1998), aff'd 186 F.3d 869 (9th Cir. 1999)(table) (ten-month delay in the processing of inmate's religious mail held to be negligent and not sufficient to state a claim under § 1983). Since Cleary has not proffered any evidence to refute the contention that defendant Imschweiler's actions were no more than negligence, as suggested by the defendants, defendants are entitled to summary judgement on this claim.

3.    Lack of Personal Involvement of Kyler and Ward.

In order to state a viable § 1983 claim, a plaintiff must make a showing that the conduct complained of was committed by a person acting under color of state law and that the conduct deprived him of a right, privilege, or immunity secured by the Constitution or by a statute of the United States. 42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1017, 1082 (3d Cir. 1976).

It is well established that the doctrine of *respondeat superior* is not acceptable as a basis for liability under section 1983. *See Monell v. Dep't. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Rather, personal involvement by a defendant is essential in a civil rights action. *See Rode*, 845 F.2d at 1207. "Allegations of personal direction or of actual knowledge and acquiescence" are adequate to demonstrate personal involvement. *Id.*, 845 F.2d at 1207. This is the personal involvement requirement.

Defendants Kyler and Ward are entitled to summary judgement on all claims as Cleary has not demonstrated their personal involvement in the delay of his legal or religious mail. As noted before, Cleary testified that he could not say whether or not Superintendent Kyler or Unit Manager Ward had any role in the delay of his mail.  (Doc. 39, Ex. 7, p. 57-58).  Nor is their

-18-

supervisory role alone, as Superintendent of the institution, or Manager of the specific unit on which Cleary was housed, sufficient to demonstrate their involvement or liability in the alleged deprivations.  Cleary clearly attempts to rope in these defendants under the theory of *respondeat superior* which he cannot do.  *Rode v. Dellarciprete, supra.*

V.    Conclusion

         In sum, faced with the defendants' well-supported motion for summary judgment Cleary failed to come forward with evidence on which a jury could reasonably find that the defendants denied his access to the courts, or infringed impermissibly on his religious rights.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  We will issue an appropriate order.

WILLIAM W. CALDWELL
United States District Judge

Date:  November 27, 2002